**The HARTFORD INSURANCE COMPANY, a Connecticut Corporation, Appellant,**

v.

**Steven O'MARA, an Individual, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 15, 2005.

Filed Aug. 29, 2006.

Dianne S. Wainwright, Pittsburgh, for appellant.

Patrick J. Rodden and David B. Rodden, Philadelphia, for appellee.

BEFORE: DEL SOLE, P.J., JOYCE, MUSMANNO, LALLY–GREEN, TODD, KLEIN, BENDER, BOWES and GANTMAN, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, The Hartford Insurance Company ("Hartford"), appeals from the August 29, 2003, judgment entered in the Court of Common Pleas of Philadelphia County in favor of Appellee, Steven O'Mara. For the following reasons, we reverse. The relevant facts and procedural history, as aptly stated by the trial court, follow:

The instant case arose out of a dispute over the proper procedure for applying for uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. In September, 1994, William and Elizabeth O'Mara ("the O'Maras"), parents of [A]ppellee Steven O'Mara ("Appellee"), applied to Hartford for automobile insurance. The O'Maras selected a policy limit of $100,000 per person and $300,000 per accident for their liability insurance. As required by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), Hartford offered the O'Maras the option of purchasing or rejecting UM and/or UIM coverage in an amount equal to or less than the amount of their policy limit. The O'Maras chose to reduce the UM and UIM coverage [to] the amount of $15,000 per person and $30,000 per accident by making this selection on a form provided to them by Hartford. The policy was then issued in October 1994.

Appellee, after being injured by an uninsured motorist in May 1995, made a claim for UM benefits under his parents' insurance policy. Hartford paid [A]ppellee the sum of $45,000 [$15,000 stacked for three vehicles] per the UM coverage, but the O'Maras subsequently advised Hartford that they believed that the UM/UIM selection form provided to them by Hartford was invalid and that they were entitled to UM/UIM benefits to the full extent of their policy. Appellee demanded that Hartford produce proof of a reduction of benefits in writing pursuant to 75 Pa.C.S. § 1734. When sufficient proof was not provided by Hartford, [A]ppellee demanded arbitration pursuant to the terms and provisions of the insurance policy. Hartford then sought a declaratory judgment in the United States District Court to affirm the validity of the UM/UIM selection form. The Federal District Court dismissed Hartford's action ruling that the dispute was properly within the arbitration clause of the policy and was appropriate for arbitration.

The matter was sent to arbitration in 2001. On January 14, 2002, the arbitrators issued an "Award and Decision of the Panel of Arbitrators". The panel concluded that "the proffered Uninsured and Underinsured Motorist Coverage Options Form and specifically the Uninsured and Underinsured Motorist Coverage Selection Section thereof, does not sufficiently comply with 75 Pa.C.S.[A.] § 1734 requiring reduction of uninsured and underinsured motorist coverage be in writing." The panel further found that " . . . while the form offers a selection as to an amount of uninsured and underinsured motorist coverage, the form does not in and of itself provide enough evidence that the insured chose to 'reduce her coverage' knowingly and intelligently." Accordingly, the panel reformed the policy limits to $100,000/$300,000 stacked, and found in favor of [A]ppellee in the amount of $107,000.00. This amount was reduced by $45,000.00

previously paid by Hartford, for a new award of $62,000.00.

Trial Court Opinion, 11/14/03, at 1–3.

¶ 2 On February 8, 2002, Appellant filed a petition to vacate the arbitrators' award. Therein, Appellant contended that the trial court had the authority to vacate the award because the arbitrators determined that Appellant's Uninsured and Underinsured Motorist Coverage Options Form did not comply with Section 1734 of the MVFRL. Appellant asserted that its selection form complied with the statutory mandate that a request for the reduction of uninsured and underinsured benefits be in writing. Appellant also argued that the trial court had the authority to vacate the award because the arbitrators exceeded their powers by reforming the policy limits. Appellee filed preliminary objections to this petition, which the trial court overruled on August 7, 2002. Appellee filed a petition for reconsideration, and the trial court denied this petition. On January 7, 2003, Appellee filed a response to Appellant's petition to vacate. Therein, Appellee averred that the trial court lacked the authority to vacate the arbitrators' decision for an error of law. On February 10, 2003, Appellant filed a motion for summary judgment, and Appellee filed a cross-motion for summary judgment on April 2, 2003. The trial court denied both of these motions. On June 10, 2003, Appellant filed a "Petition to Vacate Arbitration Award and Rule to Show Cause." On August 25, 2003, the trial court denied the petition to vacate and confirmed the award of the arbitrators. Upon Appellee's praecipe, the prothonotary entered judgment in favor of Appellee. Appellant filed a timely notice of appeal [1] and a timely concise statement of matters complained of on appeal as ordered by the trial court. *See* Pa.R.A.P. 1925(b). The trial court filed an opinion pursuant to Rule 1925(a) of the Rules of Appellate Procedure on November 14, 2003.

¶ 3 On appeal, a divided panel of our Court agreed that the trial court lacked jurisdiction to vacate the award and affirmed the judgment. Appellant filed a petition for reargument; our Court granted Appellant's petition for reargument *en banc* and withdrew our panel decision.

¶ 4 In its brief, Appellant raises the following issues for our review:

1. Did the lower Court err in denying Appellant's/Hartford's Petition to Vacate relying solely on 42 Pa.C.S. § 7314, the Pennsylvania Uniform Arbitration Act, as it is well settled under Pennsylvania law that Courts possess jurisdiction to review an uninsured motorist/underinsured motorist ("UM/UIM") arbitration award when arbitrators make a determination that the insurance Policy itself is contrary to a statutory, legislative or constitutional mandate and/or violates public policy?

2. Did the lower Court err in failing to grant Appellant's/Hartford's Petition to Vacate the Arbitrators' Award although the O'Maras' insurance Policy was in compliance with Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL")?

3. Did the lower Court err when it failed to vacate the arbitrators' award despite the fact that Mrs.

---

1. Although Appellant purports to appeal from the order confirming the arbitrators' award, the appeal properly lies from the entry of judgment following the confirmation. *See Bridges PBT v. Chatta,* 821 A.2d 590, 591 n. 1 (Pa.Super.2003), *appeal denied,* 574 Pa. 742, 829 A.2d 310 (2003); *Sherman v. Amica Mut. Ins. Co.,* 782 A.2d 1006, 1007 n. 1 (Pa.Super.2001), *appeal denied,* 568 Pa. 739, 798 A.2d 1291 (2002).

O'Mara signed a valid UM/UIM selection form, i.e., the Motor Vehicle Financial Responsibility Law § 1791 Important Notice form?

4. Did the lower Court err when it failed to vacate the arbitration award in light of the fact that Appellee/O'Mara is unable to prevail on a claim for policy reformation as such a remedy is not provided for under Pennsylvania's Motor Vehicle Financial Responsibility Law when the matter involves a "reduction" of UM/UIM coverage?

Appellant's Brief, at 4.

¶ 5 In its first issue, Appellant argues that the trial court committed an abuse of discretion or error of law when it denied Appellant's petition to vacate the arbitration award. Appellant's Brief, at 14. Specifically, Appellant contends that the panel of arbitrators based its decision upon the conclusion that the proffered "Uninsured and Underinsured Motorist Coverage Options" Form, especially the section entitled, "Uninsured and Underinsured Motorist Coverage Selections", did not sufficiently comply with Section 1734 of the MVFRL. *Id.* at 16. Appellant also states that the trial court possessed the authority to review this decision and award because the arbitrators determined that this form failed to comply with the legislative mandate of Section 1734 of the MVFRL. *Id.*

¶ 6 In general, "[w]hen we review a trial court's decision to affirm, modify or vacate an arbitration award arising from an insurance contract, this Court may reverse only for an abuse of discretion or error of law." *O'Connor–Kohler v. United Services Auto. Ass'n,* 883 A.2d 673, 676 (Pa.Super.2005) *(en banc),* quoting *Rudloff v. Nationwide Mut. Ins. Co.,* 806 A.2d 1270, 1272 (Pa.Super.2002). However, as the instant issue involves a pure question

of law, namely, whether the language of the Coverage Options Form violates a legislative mandate, our standard of review is *de novo,* and our scope of review is plenary. *See generally Kopko v. Miller,* 586 Pa. 170, 177, 892 A.2d 766, 771 (2006). Additionally, the focus of our review, Section 1734 of the MVFRL, states as follows:

**§ 1734. Request for lower limits of coverage**

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of [uninsured and underinsured motorist] coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734.

¶ 7 In the instant case, the parties agreed, in their policy, to arbitrate in accordance with the Uniform Arbitration Act of 1980 ("the Act"), 42 Pa.C.S.A. § 7301 *et seq.* Section 7314 of the Act outlines the instances in which a trial court may vacate any award entered in accordance with the Act:

§ 7314. Vacating award by court.

(a) General rule.—

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable [section 7341 allows an award to be vacated if a party was denied a hearing or fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award];

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitra-

tors prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

(2) The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

42 Pa.C.S.A. § 7314. "Under this limited standard, the resolution of factual disputes is within the province of the arbitrators." *Caron v. Reliance Ins. Co.*, 703 A.2d 63, 66 (Pa.Super.1997). Furthermore, in interpreting Section 7314, we have stated that an "allegation that a statutory arbitration award is contrary to law is not a sufficient basis for vacating the award." *Id.*, quoting *Martin v. PMA Group*, 420 Pa.Super. 624, 617 A.2d 361, 363 (1992).

¶ 8 Apart from these rather limited circumstances where a trial court may vacate an arbitrators' decision and award, the courts of this Commonwealth have recognized one additional basis under Section 7314(a)(1)(i) that would permit the trial court to vacate an award. In *Webb v. United Services Automobile Assoc.*, 227 Pa.Super. 508, 323 A.2d 737 (1974), *appeal denied*, September 3, 1974,[2] the insureds sustained personal injuries when an unknown motorist swerved his car in front of theirs, causing them to hit a third car. The insureds brought an action against their carrier, USAA, on the theory that the unknown motorist's car constituted a "hit-and-run" car. The case proceeded to arbitration, and the panel of arbitrators found in favor of USAA. The panel's decision was based on a provision of the insureds' policy defining a "hit-and-run" car as one causing injury arising out of physical contact. The arbitrators concluded that, because the unknown motorist did not physically contact the insureds' car, they could not obtain coverage from USAA. The insureds filed a petition and rule to vacate the arbitrators' award and to return the case to arbitration on the questions of fault and damages alone. The trial court granted this petition.

¶ 9 USAA filed an appeal from the order granting this request. Before our Court would consider the merits of the issue, it sought to determine whether the trial court possessed the authority to vacate the award. Preliminarily, our Court noted that some Pennsylvania courts have held that "all questions under an uninsured motorist clause with an arbitration provision are within the exclusive jurisdiction of the arbitrators." *Id.* at 738. We also observed that appellate courts have taken jurisdiction over cases involving

---

**2.** We note that this decision, and the cases cited therein, predated the enactment of the

Uniform Arbitration Act of 1980 and the MVFRL.

such clauses in some instances. After examining the cases, however, our Court concluded that certain consistent general principles emerged from the seemingly contradictory statements of jurisdiction. We noted that, in those cases where the appellate courts accepted jurisdiction, the dispute involved the validity of some part of the uninsured motorist clause.[3] In those cases where we did not interfere, the dispute involved the application of the clause and the construction of certain words and phrases within it.[4] We then concluded:

[t]hus the rule, to which all cases conform, is that where the application or construction of the [insurance] clause is at issue the dispute is within the exclusive jurisdiction of the arbitrators; the courts will take jurisdiction only where the claimant attacks a particular provision of the clause itself as being contrary to a constitutional, legislative, or administrative mandate, or against public policy, or unconscionable.

*Id.* at 741 (footnotes omitted).[5] Thereafter, pursuant to this rule, our Court con-

3. Our Court collected the following cases in support of this assertion: *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968) (finding that the trial court addressed the issue of whether an "other insurance clause" violated the intendment of the Uninsured Motorist Law); *Nationwide Mut. Ins. Co. v. Ealy*, 221 Pa.Super. 138, 289 A.2d 113 (1972) (addressing whether the Uninsured Motorist Law permitted Pennsylvania insurance companies to contractually divide the uninsured motorist coverage of an insured into non-cumulative policies attaching separately to the insured's individual automobiles); *Bankes v. State Farm Mut. Auto. Ins. Co.*, 216 Pa.Super. 162, 264 A.2d 197 (1970) (addressing the issue of whether an exclusion in the policy, which denied coverage to an insured while operating a motor vehicle owned by him, but not insured under the policy, is void as repugnant to the Uninsured Motorist Act); *Ellison v. Safeguard Mut. Ins. Co.*, 209 Pa.Super. 492, 229 A.2d 482 (1967) (addressing the issue of whether the dispute was arbitrable where the policy did not contain an arbitration clause).

4. The *en banc* Court collected the following cases in support of this assertion: *Allstate Ins. Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972) (finding that the arbitrators may consider the legal question of whether the policy expired six days prior to the accident); *Nationwide Mut. Ins. Co. v. Barbera*, 443 Pa. 93, 277 A.2d 821 (1971) (finding that the trial court lacked the authority to vacate an award where the legal issue before the arbitrators involved whether the policy required certain monies to be held in trust for Nationwide); *Preferred Risk Mut. Ins. Co. v. Martin*, 436 Pa.

374, 260 A.2d 804 (1970) (arbitrators considered the claim of whether a foster child qualified as an insured under the policy); *Great Am. Ins. Co. v. American Arbitration Assoc.*, 436 Pa. 370, 260 A.2d 769 (1970) (stating that the issues of whether the plaintiff was entitled to coverage and the amount of damages is within the province of the arbitrators and the trial court may not alter these determinations to correct a mistake of law); *Pennsylvania Gen. Ins. Co. v. Barr*, 435 Pa. 456, 257 A.2d 550 (1969) (finding that it is within the province of the arbitrators to interpret the language of a contract to determine the amount of coverage available under the policies); *Allstate Ins. Co. v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969) (stating that it is within the province of the arbitrators to determine whether plaintiff was a member of insured's household); *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968) (stating that the arbitrators may conclude whether an insured forfeited his uninsured motorist coverage and whether he complied with the conditions precedent to any right against the carrier); *National Grange Mut. Ins. Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968) (finding that arbitrators may consider the question of whether the tortfeasor constitutes an uninsured motorist); *Hartford Ins. Group v. Kassler*, 227 Pa.Super. 47, 324 A.2d 521 (1974) (finding that the arbitrators may consider the question of whether the tortfeasor constitutes an uninsured motorist).

5. Although the *USAA* court's rule provided for a trial court to accept jurisdiction where a *claimant* challenges a clause as unconscionable, contrary to public policy, or contrary to a

sidered whether the existence of a physical contact requirement in the policy subverted the purpose of the Uninsured Motorist Coverage Act.

¶ 10 Over the next three decades, our Court and the Supreme Court applied the *USAA* rule on numerous occasions to examine the propriety of the arbitrators' decisions. *See e.g. Davis v. Government Employees Ins. Co.,* 500 Pa. 84, 88 n. 5, 454 A.2d 973, 975 n. 5 (1982) (reviewing an insured's claim that the automobile insurance policy at issue failed to provide the coverage for "uninsured motor vehicles" mandated by law); *Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 342–343, 648 A.2d 755, 758 (1994) (finding that the trial court possessed the authority to review an arbitration award which was based upon a declaration that the territorial limitations clause of an insurance policy violated public policy); *Caron,* 703 A.2d at 67 (finding that the trial court possessed the authority to consider the public policy issue of whether an insured can issue a policy which insures a company's vehicles but restricts the extent of an employee's coverage to when he/she is operating one of those vehicles); *Zak v. Prudential Prop. & Cas. Ins. Co.,* 713 A.2d 681, 684 (Pa.Super.1998) (finding that the courts could consider whether a clause making an arbitration award binding on the insured if it did not exceed $15,000 was against public policy); *Burstein v. Prudential Property and Cas. Ins. Co.,* 570 Pa. 177, 182, 809 A.2d 204, 206 (2002) (stating that the court possessed the authority to consider whether the "regularly used, non-owned car" exclusion and its resulting contractual restraint on underinsured coverage portability violates public policy); *Richmond v. Prudential Property and Cas. Ins. Co.,*

856 A.2d 1260, 1264–1265 (Pa.Super.2004) *(en banc)* (stating that the court had jurisdiction to review whether the "Who Is Insured" definition in the policy impermissibly narrowed and conflicted with the plain language of the MVFRL and, as such, was enforceable and void as against public policy).

¶ 11 In numerous instances, however, the courts of this Commonwealth concluded that the claims raised by the petitioner did not fall under the ambit of this rule and refused to review the arbitrators' decisions. *See e.g. Azpell v. Old Republic Ins. Co.,* 526 Pa. 179, 183, 584 A.2d 950, 952 (1991) (holding that the trial court lacked the authority to vacate an award on the theory that the Workmen's Compensation Act precluded an employee from recovering uninsured motorist benefits because the appellant claimed that the award itself, not a provision in the insurance contract, violated public policy); *Schultz v. Aetna Cas. and Sur. Co.,* 443 Pa.Super. 659, 663 A.2d 166, 169 (1995) (holding that an arbitration award involving the appellant's challenge to the failure of the insurance company to ensure that he had read and understood a signed waiver and to attach the waiver to the insurance policy as contrary to public policy is not reviewable by the courts because there is no challenge to a provision or term of the policy; the appellant never claimed that the waiver or policy language itself was contrary to the public policy of this Commonwealth); *Prudential Property and Casualty Ins. Co. v. Stein,* 453 Pa.Super. 227, 683 A.2d 683, 685 (1996) (stating that the trial court lacked the authority to review a claim that policy provisions were contrary to a legislative mandate where the arbitrators' award did not state that it found any provision con-

---

constitutional, legislative, or administrative mandate, our Supreme Court has recognized that the trial court may also accept jurisdic-

tion where the *insurer* raises a similar challenge. *See Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 343, 648 A.2d 755, 758 (1994).

trary to statute and the appellant could not demonstrate the actual basis for the arbitrators' decision); *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa.Super.1997), *appeal denied*, 553 Pa. 690, 717 A.2d 1028 (1998) (holding that an arbitration award based on the conclusion that unappended waiver forms are unenforceable pursuant to public policy is not reviewable by the courts because, as stated in *Schultz*, it is not based on an allegation that a specific provision in an insurance policy contravenes public policy).

¶ 12 Appellee sought arbitration, in the instant case, upon his conclusion that his mother's signature on the Coverage Options Form did not sufficiently qualify as a written request for the reduction of benefits under Section 1734. In the memorandum of law submitted to the arbitrators, Appellee argued that the form did not contain the word "reduction" or identify the numerical value for the maximum coverages. Specifically, the form, printed on one full sheet, provided:

**Uninsured and Underinsured Motorist Coverage Options**

Uninsured and Underinsured Motorist Coverages are optional in Pennsylvania. However, we are required by law to include these coverages unless you reject them in writing. We recommend you include both coverages in your policy limits equal to your Liability limits. Your self-protection and that of your passengers should equal the protection you provide others.

Uninsured and Underinsured Motorist Coverages apply to private passenger vehicles. They cover you, relatives living with you and other people in your car.

**Uninsured Motorist Coverage** pays benefits for bodily injury or death caused by:

*An uninsured driver.

*A hit-and-run driver.

**Underinsured Motorist Coverage** pays benefits for bodily injury or death caused by:

*An insured driver whose Bodily Injury Liability limits are inadequate to cover the bodily injury losses incurred.

Uninsured and Underinsured Motorist Coverage limits are automatically "stacked". This means your total coverage limit is the sum of the individual limits on each of your vehicles. "Stacking" can only be used if you have more than one vehicle.

However, you have the option to reject "stacking" on one or both of these coverages. Your premium amount will be lower if you reject "stacked" coverage. To reject "stacked" Uninsured and/or Underinsured Motorist Protection, refer to **Step C** and **Step E** on the sheet titled **How To Select Your Coverages**.

If you choose to include Uninsured and/or Underinsured Motorist Coverage in your policy, please indicate the coverage limits you desire below. If you wish to reject one or both of these coverages entirely, please refer to **Step B** and **Step D** on the sheet titled **How To Select Your Coverages**.

**Uninsured and Underinsured Motorist Coverage Selections**

Use this sheet to select your coverage limits. To reject these coverages, you must sign and return the form titled **Rejection of Uninsured Motorist Protection** and/or the form titled **Rejection of Underinsured Motorist Protection**. If you do not make a selection for these coverage limits, your policy will include limits equal to your Liability limits (unless you have returned the rejection form).

**Uninsured Motorist Coverage limits**

☐ Maximum amount available (an amount equal to the Liability limits of your policy).

☐ The following specific amount
$ _____ /$ _____

☐ Minimum amount available ($15,000 per person/$30,000 per accident).

**Underinsured Motorist Coverage limits**

☐ Maximum amount available (an amount equal to the Liability limits of your policy).

☐ The following specific amount
$ _____ /$ _____

☐ Minimum amount available ($15,000 per person/$30,000 per accident).

The Hartford Insurance Company of the Midwest Personal Auto Policy No. 55 PHE215694.

¶ 13 On the other hand, Appellant argues that the language contained in this form, coupled with Elizabeth O'Mara's signature at the end of these sections and the placement of a handwritten "X" in each of the boxes designated "Minimum amount available", qualified as the request of a named insured, in writing, for the issuance of coverage in an amount less than the policy limits of liability for bodily injury. *Id.*

¶ 14 At the conclusion of the arbitration proceeding, the panel of arbitrators agreed with Appellee's position and reached the following conclusion:

We find that the proffered Uninsured and Underinsured Motorist Coverage Options Form and specifically the Uninsured and Underinsured Motorist Coverage Selections Section thereof, does not sufficiently comply with 75 Pa. C.S.[A.] § 1734 requiring reduction of uninsured and underinsured motorist coverage be in writing. Specifically, while the form offers a selection as to an amount of uninsured and underinsured

motorist coverage, the form does not in and of itself provide enough evidence that the insured chose to "reduce her coverage" knowingly and intelligently. Use of more specific language as to reduction might have served as affirmation of the selection and definitive proof the reduction was knowing and intelligent. Such is absent in this form. In requiring that a reduction be in writing, § 1734 requires the reduction language to be specific and unambiguous.

The form, proffered in this matter, is, after much deliberation and analysis, at best, ambiguous on the issue of providing notice of reduction and should therefore, be interpreted against [Appellant].

The policy limits are reformed to $100,000/$300,000.00 stacked.

Award and Decision of Panel of Arbitrators, at 1.

¶ 15 As the plain language of the arbitrators' award and decision indicates, the panel based its decision upon its determination that the Coverage Options Form and the Coverage Selections Section, did not "sufficiently comply with 75 Pa.C.S.A. § 1734 requiring reduction of uninsured and underinsured motorist coverage be in writing." *Id.* Furthermore, the arbitrators emphasized that Section 1734 requires the "writing" to contain specific and unambiguous "reduction language" and that Appellant could have chosen "more specific language as to reduction." *Id.* Since the arbitrators imputed a "specific and unambiguous" requirement into the language of Section 1734 and then determined that the absence of more specific language rendered the form noncompliant, we agree with Appellant that the arbitrators' decision was based upon the conclusion that certain provisions of the policy (*i.e.* the "Uninsured and Underinsured Motorist Coverage Options" Form) did not comply with a legislative or statutory mandate.

Thus, we do conclude that the trial court erred when it declined to review the arbitrators' decision.

¶ 16 In so holding, we cannot agree with the contrary positions espoused in Appellee's brief. Foremost, Appellee suggests that "[al]though a court has authority to review an arbitration award based on a provision contrary to public policy, it does not necessarily give the court authority to review an award where the arbitrators themselves refuse to apply a provision on public policy grounds." Appellee's Brief, at 5, citing *Hawthorne v. Kemper Group*, 758 F.Supp. 296 (E.D.Pa.1991). Although the District Court's decision in *Hawthorne* does recite this statement of law, we observe that a controlling and more recent decision of our Supreme Court indicates otherwise. *See Hall, supra* at 343, 648 A.2d at 758 (stating "in short, a court has the power to review an arbitration award which is based on the declaration of an insurance policy clause to be void as against public policy").

¶ 17 Second, we cannot agree that the *USAA* rule only applies in instances where the petitioner alleges that a provision violates public policy. *See* Appellee's Brief, at 5. The *USAA* rule permitted review in a broader range of circumstances, namely, where the petitioner claimed that a provision violated public policy, was unconscionable, or was contrary to a legislative, administrative or constitutional mandate. *See e.g. Davis, supra* (concluding that the *USAA* rule gave the court authority to review the arbitrators' decision where the petitioner solely challenged a provision of the policy as contrary to statute); *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955 (2001) (acknowledging that a petitioner's claim that a provision conflicts with the provisions of the MVFRL is a distinct consideration from whether the provision violates public policy).

¶ 18 Third, Appellee appears to suggest that the *USAA* rule would not permit review in the instant case because the Uninsured and Underinsured Motorist Coverage Options Form "is not a provision of the policy." Appellee's Brief, at 7. While our Commonwealth's jurisprudence has permitted review in those instances where the petitioner or arbitrators allege that a particular policy provision or insurance clause is contrary to a legislative mandate, we do not read this case law as restrictively as Appellee. Regardless of whether the Coverage Options Form qualifies as a portion of the insurance "policy", we may only describe this form as an integral part of the contract for automobile insurance. The policy language itself informs the insured that Appellant will provide coverage in the amounts listed on the policy's Declaration Sheet; the policy's Declaration Sheet indicates that Appellee has purchased Uninsured and Underinsured Motorist Coverage in the amount of $15,000 per person/ $30,000 per accident and Bodily Injury limits in the amount of $100,000 per person/ $300,000 per accident; and Section 1734 of the MVFRL indicates that an insured may only reduce its Uninsured/Underinsured Motorist Coverage below the Bodily Injury limits if requested in writing. Since the existence of a reduction request impacts upon the insurance company's ability to provide lower Uninsured/Underinsured coverage, we find the reduction form inextricably linked to the parties' contract of insurance. Moreover, since the General Assembly has chosen to regulate the manner in which an insured may reduce his/her coverage, we have no basis to conclude that the *USAA* rule would not apply in the instant case.

¶ 19 Fourth, Appellee contends that trial court properly denied Appellant's

request to review the award because "Appellant chose not to make a record of the Arbitration proceedings, which it had a right to do pursuant to 42 Pa.[C.S.A.] § 7307(b)". Appellee's Brief, at 9. Appellee contends that, without a record of the proceedings, a presumption exists in favor of the award's validity, and the reviewing court has no basis upon which to second guess the arbitrators, as fact-finders. *Id.*, citing *Parking Unlimited, Inc. v. Monsour Med. Found.*, 299 Pa.Super. 289, 445 A.2d 758 (1982) and *Pein v. State Farm Mut. Auto. Ins. Co.*, 241 Pa.Super. 283, 361 A.2d 348 (1976). Contrary to Appellee's assertion, we do not find that Appellant's failure to order a transcript precludes our review of the instant case. Foremost, an appellant has no obligation to order a transcript of the arbitration proceedings. *See Cerankowski v. State Farm Mut. Auto. Ins. Co.*, 783 A.2d 343, 346 (Pa.Super.2001), *appeal denied*, 568 Pa. 692, 796 A.2d 977 (2002). Secondly, where, as here, the petitioner has asked us to consider a pure question of law, a presumption of validity does not exist, *see Kopko*, 586 Pa. at 177, 892 A.2d at 771, and we need not review a transcript. *See Cerankowski, supra* (holding that the absence of a stenographic record of an arbitration did not preclude review where the claimant alleged that a clause was contrary to public policy, a pure question of law).[6,7]

**6.** In his brief, Appellee also suggests that Appellant may not challenge the arbitrators' authority to resolve this dispute since Appellant did not object to this authority at the hearing. Appellee's Brief, at 8, citing *Hawthorne*, 758 F.Supp. at 298 and 42 Pa.C.S.A. § 7314(a)(1)(v) (stating "the court shall vacate an award where ... there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing"). Since our Court has determined that Appellant may obtain review of the arbitrators' decision under Section 7314(a)(1)(i), not (v), we need not consider whether Appellant waived a challenge under (v). *See Hall, supra* (providing that Section 7314(a)(1)(i) applies when the courts are asked to review an award as unconscionable, contrary to public policy, or contrary to an administrative, constitutional or legislative mandate).

**7.** Appellee also suggests that a release, which Appellant drafted and Appellee signed on December 2, 1999, constituted an express agreement that the arbitration panel would finally resolve the parties' dispute. Appellee's Brief, at 8–9. The release stated:

I, Steven O'Mara, intending to be legally bound hereby, do hereby acknowledge receipt of the sum of Forty–Five Thousand Dollars ($45,000) from The Hartford Insurance Company ("Hartford") as a result of the injuries which I suffered in a motor vehicle accident on May 21, 1995. I understand, and acknowledge, that in the event that it is determined by a Court or by a panel of arbitrators, and subject to all rights of appeal therefrom, that the $45,000 which has been paid by Hartford constitutes the maximum UM coverage available to me for the June 6 accident, then my acceptance of that sum shall constitute a full and final release and discharge of all claims, demands, rights, interests, damages and benefits, to which I may be entitled from The Hartford, its agents, employees, successors, affiliates and parents, as a result of the May 21, 1999 accident through the UM coverage of Hartford policy number 55 PH 830388 ("the policy").

I acknowledge that there is an ongoing dispute between myself and Hartford regarding the amount of the uninsured motorist ("UM") coverage limits available for the June 6 accident under the Policy. I specifically reserve the right to pursue a claim that the Hartford Policy should be reformed to reflect UM coverage limits equal to the liability limits of the Policy. This Release is *not* intended to diminish my right to pursue that claim, nor to diminish any rights or defenses which Hartford may have to the claim for reformation or to my claimed entitlement to UM benefits in excess of the sum paid.

I further understand that there is an ongoing dispute between myself and Hartford

¶ 20 Furthermore, we do not find the position advanced by the Pennsylvania Trial Lawyers Association ("PaTLA"), as *amicus curiae,* persuasive. In its brief, PaTLA asserted that, if our Court determines that the trial court has the authority to review the arbitrators' decision, we would "grant[ ] insurance companies broader arbitration appeal rights than are afforded to accident victims." PaTLA's Brief, at 2. PaTLA argued that our Court's decisions in *Schultz, supra* and *Nealy, supra* foreclosed insureds from challenging the validity of a Section 1734 waiver on public policy grounds and that "insurance companies should play by the same rules." PaTLA's Brief, at 2, 3–5. A close reading of both *Schultz* and *Nealy* reveals, however, that our Court precluded review in those cases because the insureds did not allege that a *provision* of the policies violated a legislative mandate or public policy; rather, the insureds contended that the carrier's *conduct (i.e.* failing to make sure the insured read and understood the waiver form and failing to append the waiver to the policy) violated a legislative mandate or public policy. Nothing in the holdings of *Schultz* or *Nealy* prohibits an insured from obtaining review of an arbitration award on the basis that a provision in the policy violates public policy or a legislative mandate.

¶ 21 Nor do we accept PaTLA's contention that any decision permitting review in the instant case would bestow jurisdiction upon the courts "any time a statute had a significant bearing on the rights of parties to an arbitration." PaTLA's Brief, at 7. In accordance with the rule espoused in *USAA,* we have accepted jurisdiction because the arbitrators concluded that the contractual language violated a statutory mandate. To obtain review, the petitioner must adhere to this standard; it is insufficient to assert that a statute has a significant bearing upon the outcome. *See e.g. Azpell, supra* (finding that the trial court did not have the authority to review an arbitrators' decision, even though the Uninsured Motorist Act and Workmen's Compensation Act had bearing on the award, where the petitioner asserted that the award, not any provision of the insurance policy, violated public policy).

¶ 22 Also, we cannot agree with our esteemed dissenting colleagues that Section 7314(a)(2) of the Uniform Arbitration Act has effectively supplanted the *USAA* rule. Our Supreme Court has continued to apply the *USAA* rule, as adopted by the Supreme Court in *Davis,* in instances where the parties agreed to arbitrate under the Act of 1980, *see Hall, supra; Azpell, supra* (expressly stating that the Supreme Court continues to adhere to the *Davis* rule), even though the Act does not

regarding whether the reformation claim referred to herein may be resolved by a Court through a declaratory action or must be resolved through arbitration. Nothing contained in this Release is intended as a waiver by myself or Hartford of the right to challenge the propriety of either forum for the resolution of the reformation claim. It is understood that nothing contained herein is intended to constitute a release of any claim pursuant to 42 Pa.C.S. § 8371.
(Emphasis in original.)
Upon our review of the release language, we cannot agree with Appellee's interpretation. The release acknowledges two ongoing disputes between the parties: (1) the amount of the uninsured motorist coverage limits available and (2) whether this dispute can be resolved in a declaratory judgment action or through arbitration. Contrary to Appellee's suggestion, however, the release does not state that Appellant has relinquished its right to challenge the propriety of the arbitrators' award. In fact, the release indicates that it was not intended to diminish Appellee's right to pursue reformation or to diminish Appellant's right to defend against Appellee's claimed entitlement to benefits in excess of $45,000.

expressly permit review under Sections 7314(a)(1)(i) and 7341 where the arbitrators determine that a policy provision violates public policy or is contrary to a constitutional, administrative or legislative mandate. Our dissenting colleagues attempt to distinguish these subsequent cases on the basis that each involved a public policy question, not an issue of whether a policy provision violated a constitutional, administrative or legislative mandate. While we would agree with this factual assessment, we cannot conclude that this fact creates a meaningful distinction. The broad language of Section 7314(a)(2) prohibits the courts of this Commonwealth from vacating an award where "the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity." 42 Pa.C.S.A. § 7314(a)(2). This language could as easily preclude review of a decision that violates public policy as a decision that violates a legislative mandate. As the Supreme Court has continued to apply the rule pronounced in *USAA* and adopted in *Davis*, we must continue to apply it until such time as the Supreme Court indicates that it does not survive, in whole or in part, the Act of 1980. *See Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 801 (Pa.Super.1999), *appeal denied*, 559 Pa. 692, 739 A.2d 1058 (1999) (stating that, as an intermediate appellate court, our Court must effectuate the decisional precedent of the Supreme Court).

¶ 23 Having determined that the courts possess the authority to review the instant challenge to the arbitrators' award and decision, we will now consider whether the language of the Coverage Options Form fails to comply with the legislative mandate of Section 1734. "When statutes have a bearing on the outcome of a case, we begin by analyzing the express words of the statutes." *Kmonk–Sullivan, supra*

at 521, 788 A.2d at 959. "When the statute is clear, we need go no further to discern the intent of the legislature." *Id.*, citing 1 Pa.C.S.A. § 1921(b). Moreover,

[t]he interpretation of an insurance contract involves a question of law. Therefore, the scope of our review is plenary. When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract.

*O'Connor–Kohler*, 883 A.2d at 676 (internal quotations and citations omitted).

¶ 24 As stated *supra*, Section 1734 of the MVFRL states that "a named insured may request in writing the issuance of [uninsured and underinsured motorist coverage] in amounts equal to or less than the limits of liability for bodily injury." *See* 75 Pa.C.S.A. § 1734. Our reading of the express words of this section permits only one interpretation: the writing must manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits. Thus, to the extent that the panel of arbitrators read Section 1734 to require "specific and unambiguous" language in the "writing" that evidences an insured's intent to purchase uninsured and underinsured coverage in lower amounts, we would agree with this interpretation of the legislative mandate.

¶ 25 Consistent with this interpretation, our Supreme Court has imposed two technical requirements upon a Section 1734 "writing". In *Lewis v. Erie Ins. Exchange*, 568 Pa. 105, 123, 793 A.2d 143, 153 (2002), our Supreme Court stated that, to constitute a valid request for "specific limits coverage" under Section 1734, the named insured must sign the "writing" and the "writing" must include an express des-

ignation of the amount of uninsured and underinsured coverage requested. The Supreme Court imposed these requirements to lessen the potential for confusion and, presumably, to insure that an insured has manifested his/her intent to purchase uninsured and underinsured coverage in an amount less than the bodily injury limits.

¶ 26 However, our review of the arbitrators' award and decision reveals that the arbitrators imposed an additional requirement. Instead of exclusively focusing upon whether the language of the "writing" expressed the insured's intent to purchase lower uninsured and underinsured limits, whether the named insured signed the "writing", and whether the writing designated the amount of coverage requested, the arbitrators determined that the Coverage Options Form did not constitute a valid request for lower limits in writing because the form itself could have contained "more specific language as to reduction which might have served as affirmation of the selection" or more "evidence that the insured chose to 'reduce her coverage' knowingly and intelligently." In so stating, the arbitrators' award and decision permits the conclusion that the arbitrators found the absence of certain unspecified language in violation of the mandate of Section 1734.

¶ 27 Upon our reading of Section 1734, we cannot agree that Section 1734 dictates the particular language that the parties must utilize to accomplish a valid request for the reduction of uninsured and underinsured motorist coverage limits. *Compare* 75 Pa.C.S.A. § 1731(b), (c), (c.1) (requiring the utilization of particular language and form to effectuate a valid rejection of uninsured or underinsured motorist benefits). Therefore, we cannot conclude that the instant form fails to comply with Section 1734 due to the ab-

sence of "more specific language as to reduction." To comply with Section 1734, the language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits and the amount of the requested coverage. Stated otherwise, the language of the "writing" does not violate the mandate of Section 1734 because the arbitrators could conceive of a better way to fashion the language.

¶ 28 In our view, the language of the Coverage Options Form satisfies this requirement. The form notifies the insured that "Uninsured and Underinsured Coverages are optional in Pennsylvania" and that the insured may reject such coverage. In the "Uninsured and Underinsured Motorist Coverage Selections" Section of the form, the language directs that the insured must "[u]se this sheet to select your coverage limits" and that the failure to make a selection indicates that his/her "policy will include limits equal to the Liability limits (unless [the insured] has returned the rejection form)". The sheet then provides two headings, "Uninsured Motorist Coverage limits" and "Underinsured Motorist Coverage limits", and three options underneath each of the headings. The first option permitted the insured to select the "Maximum amount available (an amount equal to the Liability Limits of [the] policy)." The second option permitted the insured to choose and specify an amount. The third option permitted the insured to select the "Minimum amount available ($15,000 per person/$30,000 per accident)." The form reveals a handwritten "X" next to the third option under both the uninsured and underinsured headings. Additionally, Elizabeth O'Mara signed the bottom of this form. This form, viewed as a whole, indicates Mrs. O'Mara's decision to select uninsured and underinsured cov-

erage in an amount less than the amount of her liability limits, namely, $15,000 per person and $30,000 per accident.

¶ 29 Upon our conclusion that the Coverage Options Form complied with the mandate of Section 1734, we find that the trial court erred when it refused to vacate the arbitrators' decision and award.[8]

¶ 30 Judgment reversed. Judgment entered in favor of Hartford. Jurisdiction relinquished.

¶ 31 KLEIN, J. files a Dissenting Opinion, joined by DEL SOLE, P.J., MUSMANNO, J., and TODD, J.

DISSENTING OPINION BY KLEIN, J.:

¶ 1 I believe that errors of law by an arbitration panel in a case such as this are not reviewable by this Court unless contrary to public policy, because this case is governed by the rules of common law arbitration, not statutory arbitration. Therefore, the only standard of review is for fraud, misconduct, corruption or other irregularity that caused the rendition of an unjust, inequitable or unconscionable award. See 42 Pa.C.S. §§ 7314, 7341. The only exception to this rule is when an arbitration decision violates stated public policy, not present in this case. Therefore, whether or not the underlying arbitration decision in this matter was correctly decided, I do not believe we can reach that issue or upset the arbitration award. Therefore, I am constrained to dissent.

¶ 2 Prior to the Uniform Arbitration Act of 1980, 42 Pa.C.S. § 7300 et seq., our Court had jurisdiction to review errors of law that may have occurred during arbitration. However, the Arbitration Act removed that jurisdiction with section 7314(a)(2), which states:

> The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

The legislature has made it abundantly clear that an error of law, up to and including a bald misapplication or misinterpretation of the law, is not reviewable by our Court and cannot be the reason for vacating or refusing to confirm an award. To change the situation, either the legislature has to change the law or the insurance company has to provide for different arbitration procedures.

¶ 3 The case law cited by the majority as the foundation for its decision was all based upon the prior law, not upon the Uniform Arbitration Act. The two leading decisions by our Court, *Webb v. United Services Automobile Assoc.*, 227 Pa.Super. 508, 323 A.2d 737 (1974) *(en banc);* and *Ellison v. Safeguard,* 209 Pa.Super. 492, 229 A.2d 482 (1967), clearly pre-date the enactment of the Arbitration Act. The leading Supreme Court case, *Davis v. Government Employees Insurance Co.,* 500 Pa. 84, 454 A.2d 973 (1982), was decided after the Act took effect, but the underlying factual scenario occurred in 1979,[1] prior to the Act's effect. As our Court pointed out in *Sherman v. Amica Mutual Insurance Co.,* 782 A.2d 1006 (Pa.Super.2001), a court of law was entitled to review an arbitration award for errors of law, even after the passage of the Arbitra-

---

8. Because we need only consider whether the courts had jurisdiction to review the arbitrators' award and decision and whether the language of the Coverage Options Form conflicted with a legislative mandate, we need not consider Appellant's remaining issues.

1. We know this because the original court term and number for the action was 6553 April Term, 1979. Thus, all relevant happenings took place before the 1980 Arbitration Act.

tion Act, if the arbitration agreement was entered into prior to the effective date of the Act. Thus, all three cases which form the foundation of the majority opinion were decisions based upon prior law, not the Arbitration Act. This is further confirmed by the fact that *Davis,* the only case decided after 1980, does not refer to the Act.

¶ 4 Thus, any jurisdictional subject matter statement taken from those cases that contradicts the current statute would be inapplicable. The statement, taken from *Webb,* that "the courts will take jurisdiction only where the claimant attacks a particular provision of the clause itself as being contrary to a constitutional, legislative or administrative mandate, or against public policy, or unconscionable" is a simple statement of subject matter review that was applicable at the time, but which has been supplanted by statute. *See* 42 Pa.C.S. § 7314(a)(2).

¶ 5 Other cases cited by the majority to support the notion that appellate courts have taken jurisdiction to resolve disputes over the validity of some part of the uninsured motorist clause, *see* Majority Opinion at 595, n. 3, are inapplicable to the facts at hand. Both *Harleysville v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968) and *Nationwide v. Ealy,* 221 Pa.Super. 138, 289 A.2d 113 (Pa.Super.1972) *(en banc),* pre-date the Arbitration Act and were appealed from declaratory judgment actions, not arbitration decisions. *Bankes v. State Farm Mut. Auto. Ins. Co.,* 216 Pa.Super. 162, 264 A.2d 197 (1970) *(en banc),* pre-dates the Act and was appealed from a Court of Common Pleas decision rendered from a case stated trial. None of these cases stand for the proposition that under the Uniform Arbitration Act we currently have the ability to review errors of

law of an arbitration panel. Similarly, the cases cited that allow for appellate review of the construction of words and phrases of an insurance policy all pre-date the Act and are similarly inapplicable.[2] *See* Majority Opinion at 595, n. 4

¶ 6 While there have been some cases post-Act that have found an exception to the statutory rule forbidding review of arbitration decisions, all of those cases turn on the invocation of public policy. While some of the language in those cases sometimes refer to the *Davis/USAA* rule, a careful reading of the cases shows they all are either referring to prior law or invoking a public policy exception.

¶ 7 As noted above, *Davis* adopted the *USAA* rule for a factual scenario where the old law applied. *Azpell v. Old Republic Insurance Co.,* 526 Pa. 179, 584 A.2d 950 (1991), states only in *dicta* that the *Davis* rule is viable. *Azpell* specifically avoids applying the rule. Finally, *Hall v. Amica,* 538 Pa. 337, 648 A.2d 755 (1994), does claim to follow the *Davis* rule, but applies it in terms of public policy. Other cases have invoked the public policy exception to arbitration review. These cases are *Burstein v. Prudential Prop. & Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204 (2002); *Zak v. Prudential Prop & Cas. Ins. Co.,* 713 A.2d 681 (Pa.Super.1998); and *Caron v. Reliance Ins. Co.,* 703 A.2d 63 (Pa.Super.1997). Interestingly, none of these latter three cases cite to or rely on the *Davis/USAA* rule.

¶ 8 It is further worth noting that none of the above cited cases, from *Davis* through *Caron,* analyze the adoption of the *Davis/USAA* rule in terms of section 7314(a)(2), which is the section that forbids the courts from reviewing incorrect (contrary to law) awards. All prior analysis

---

**2.** *McMonagle* is from 1972; *Barbera,* 1971; *Martin,* 1970; *Great American Insurance,* 1969; *Barr,* 1969; *Taylor,* 1969; *Medycki,* 1968; *Kuhn,* 1968; and *Kassler,* 1974.

has simply centered around section 7314(a)(1). To this extent, all prior case is law is distinguishable. Absent cases dealing with public policy considerations, there is no Supreme or Superior Court case that has said that after the amendment to the act this Court has the power to review the decision of an arbitration panel for an error of law.

¶ 9 It is reasonable and consistent with the law to allow this Court to review an arbitration award to see if it violated public policy without allowing this Court to merely review the legal decision of the arbitrators. The Arbitration Act lists the various situations where the court may overturn an arbitration decision in section 7314(a)(1). Section 7314(a)(1)(iii), which statutorily allows the courts to vacate an award where the arbitrators have exceeded their powers, is the relevant clause. The determination of public policy may be seen as an improper use of power by a UM/UIM arbitration panel.

¶ 10 At the same time, "public policy" cannot be used merely to say that an arbitration panel made a mistake of law. Our Supreme Court has taken pains to limit the scope and definition of "public policy" to make sure it is not used merely to describe an error of law. The Supreme Court said:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the

Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial determination.

*Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d 755, 760 (1994) (citations omitted).

¶ 11 "Public policy", therefore, is distinguishable from the situation presented here, where a panel of arbitrators has simply misapplied the law without purporting to define the policy of the Commonwealth. The misapplication of the law is specifically recognized as *no reason* to vacate an arbitration award under section 7314(a)(2). The legislature, in seeking to afford the benefits of arbitration to its citizens, has made allowances for the occasional, or even frequent, misapplication of the law. The legislature has not granted the power to determine public policy to a discrete group of private arbitrators who have no direct responsibility to the public at large.

¶ 12 By passing the Uniform Arbitration Act, our legislature accepted the fact that sometimes arbitration panels arrive at decisions that are contrary to law. Nonethe-

less, our legislature has forbidden appellate review of those decisions.[3]

¶ 13 The Hartford Insurance Company is charged with having knowledge of the laws of our Commonwealth. The Hartford knew, or certainly should have known, that a misapplication or misconstruction of the law is not subject to appellate review. If The Hartford had misgivings about its inability to contest such errors of law on appellate review, it could have drafted an arbitration clause that invoked the rules of the Arbitration Act of 1927,[4] which would have allowed for such a review. *See Goeller v. Liberty Mutual Ins. Co.,* 523 Pa. 541, 568 A.2d 176 (1990); *Pantelis v. Erie Ins. Exchange,* 890 A.2d 1063 (Pa.Super.2006). It did not. We are bound by the provisions of section 7314 and we cannot rewrite that statute especially when The Hartford itself had a perfectly acceptable means of achieving its goal.

¶ 14 For the foregoing reasons, I dissent.

---

3. The continuing conflict over what aspects of an award are reviewable is well demonstrated in *Brennan v. General Accident Fire and Life Assurance Corp.,* 524 Pa. 542, 574 A.2d 580 (1990). Although decided by our Supreme Court in 1990, Brennan dealt with the tension between common law standards of review and the standard provided in the Arbitration Act of 1927. In *Brennan,* the arbitration panel reached beyond the issues presented it and issues an award in favor of the claimant. GA appealed and our Court reversed the arbitration award as being beyond the scope of the arbitrators. Our Supreme Court reversed and reinstated the arbitration award because the proper standard of review was common law which allowed for reversal only upon a showing of fraud, misconduct or some irregularity which caused the panel to issue an unjust, inequitable or unconscionable award.
    The underlying issue in *Brennan* involved the interpretation of a setoff clause. However-

er, it does not appear that on appeal anyone challenged the clause on either public policy grounds or being contrary to any other legal mandate. Thus, the *Davis/USAA* rule was not addressed.

4. Even the briefest review of case law shows that a number of insurance companies have availed themselves of this option. Companies invoking the Arbitration Act of 1927 include Erie *(Pantelis v. Erie Ins. Exchange,* 890 A.2d 1063, (Pa.Super.2006)); USAA *(O'Connor–Kohler v. United Services Auto. Ass'n.,* 883 A.2d 673 (Pa.Super.2005)(en banc)); Nationwide *(Ricks v. Nationwide Ins. Co.,* 879 A.2d 796 (Pa.Super.2005)); National Union *(D & H Distributing Co. Inc. v. Nat. Union Fire Ins. Co.,* 817 A.2d 1164 (Pa.Super.2003)); and Progressive *(Bowersox v. Progressive Cas. Ins. Co.,* 781 A.2d 1236 (Pa.Super.2001)).