15 A.3d 896

**Jeffrey and Kimberly ORSAG, Husband and Wife, Appellants**

**v.**

**FARMERS NEW CENTURY INSURANCE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 11, 2010.

Decided March 14, 2011.

equitable conversion should be applied retroactive to the ... application date ...")).

Peter N. Munsing, Law Offices of Peter N. Munsing, Wyomissing, Scott B. Cooper, Schmidt, Ronca & Kramer, PC, Harrisburg, for Jeffrey & Kimberly Orsag.

Matthew Stephen Crosby, Andrew C. Spears, Handler, Henning & Rosenberg, L.L.P., Harrisburg, for Amicus Curiae PA Association for Justice.

Charles E. Haddick, Grant Woodrow Schonour, Dickie, McCamey & Chilcote, P.C., Camp Hill, for Farmers New Century Insurance.

Kevin Charles McNamara, Thomas, Thomas & Hafer, L.L.P., Harrisburg, for Amicus Curiae PA Defense Institute.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

On January 20, 2002, appellant Jeffrey Orsag signed a two-page application for automobile insurance seeking coverage from appellee. The application was mostly pre-printed, but contained blank spaces where requested information was filled in by hand. The requested information included vehicle descriptions, coverage amounts, and driver details. In the section devoted to coverage selections, appellant requested bodily injury liability coverage of $100,000 per person and uninsured/underinsured motorist (UM/UIM) coverage of $15,000 each for two vehicles. Immediately above appellant's signature on the second page of the application, the following language appeared:

> I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. . . .

> \*       \*       \*

> I understand that the coverage selection and limit choices here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.

Insurance Application, at 2.

Later that year, Jeffrey was injured in a car accident. Appellants filed suit against the other driver, and appellee consented to a settlement by the parties. The settlement amount apparently did not cover all of appellants' costs, as they presented appellee with a claim for UIM benefits. Appellee offered payment of $15,000, the amount of UM/UIM coverage listed in the insurance application.

In November, 2006, appellants filed a writ of summons against appellee, followed by a complaint on March 26, 2008. In the complaint, appellants claimed they were owed $100,000

in UM/UIM coverage pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7.

Section 1731(a) of the MVFRL states:

No motor vehicle liability insurance policy shall be delivered or issued ... with respect to any motor vehicle registered ... in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

*Id.*, § 1731(a).

Section 1734 states, "A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." *Id.*, § 1734. Appellants argued they should have been offered UM/UIM coverage in the same amount as their bodily injury coverage, $100,000, and, because they never made a written request to lower their UM/UIM coverage, they were entitled to UM/UIM coverage of $100,000. Appellants contended the insurance application indicating their coverage amounts did not constitute a writing for § 1734 purposes because it did not discuss the details of UM/UIM coverage and did not require separate ratification of the UM/UIM coverage selections. Appellants also found it significant that appellee failed to provide the "Important Notice" found in § 1791.[1]

1. Section 1791 provides, in relevant part:

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your

Appellee filed preliminary objections in the nature of a demurrer, arguing the insurance application signed by appellant clearly limited UIM coverage to $15,000 and plainly satisfied the writing requirement of § 1734. In support, appellee pointed to the language immediately above appellant's signature, which stated: "I understand that the coverage selection and limit choices indicated here ... will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing." Insurance Application, at 2. Appellee argued this acknowledgment, combined with the express designation of $15,000 in UM/UIM coverage on the first page of the application, demonstrated appellants intended to purchase UM/UIM coverage below their bodily injury coverage.

The trial court sustained the demurrer and dismissed the complaint with prejudice. The trial court noted the MVFRL and the case law interpreting it do not require any specific form to satisfy the requirements of § 1734. With that in mind, the trial court held the insurance application "convey[ed] the insured's desire to purchase uninsured and underinsured coverage in amounts less than bodily injury limits," satisfying § 1734's writing requirement. Trial Court Order, 8/28/08, at 6 (quoting *Hartford Insurance Co. v. O'Mara*, 907 A.2d 589, 603 (Pa.Super.2006)). Regarding appellants' claim

> household, occupants of your motor vehicle or persons struck by your motor vehicle:
>
> \*       \*       \*
>
> (6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident. Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.
>
> Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.
>
> 75 Pa.C.S. § 1791.

that the § 1791 notice was never given, the trial court concluded its absence did not entitle appellants to relief. *Id.,* at 7 (citing *Salazar v. Allstate Insurance Co.,* 549 Pa. 658, 702 A.2d 1038, 1044 (1997) (MVFRL does not provide remedy for insurer's failure to supply Important Notice)).

Appellants appealed to the Superior Court, which affirmed, finding the insurance application, signed by appellant and expressly designating the amount of desired coverage, satisfied § 1734's writing requirement. The Superior Court held that unlike § 1731, which sets forth detailed requirements and a form for rejecting UM/UIM coverage completely, § 1734's language is broad and does not require a specific form. The Superior Court noted courts should not "permit an insured to escape the consequences of a knowing and intelligent election of benefits." *Orsag v. Farmers' Insurance Co.,* No. 2659 EDA 2008, unpublished memorandum at 11, 981 A.2d 946 (Pa.Super. filed July 29, 2009) (quoting *State Farm Mutual Auto. Insurance Co. v. Hughes,* 438 F.Supp.2d 526, 535 (E.D.Pa.2006)).

Appellants sought allowance of appeal with this Court, which we granted, limited to the following question:

If an insured signs an insurance application that contains lowered uninsured/underinsured motorist coverage limits, is that signature alone sufficient to meet the requirements of Section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law?

*Orsag v. Farmers New Century Insurance,* 604 Pa. 459, 986 A.2d 128, 128 (2009) (*per curiam* ). This presents a question of statutory interpretation. Because statutory interpretation is a question of law, our standard of review is *de novo,* and our scope of review is plenary. *See In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006) (citation omitted).

Appellants argue the two-page insurance application does not constitute a writing for § 1734's purposes as it did not inform them of appellee's obligation to offer UM/UIM coverage at the same level as bodily injury coverage, and it did not include any language demonstrating it was their intent to select a lower limit of coverage. Appellants also argue they were not presented with the notice found in § 1791, nor were

they asked to provide their initials next to their coverage selections. Appellants note other cases finding a valid § 1734 writing have contained some form of additional notice, UM/UIM information, or evidence of intent that is lacking here. Accordingly, appellants contend the insurance application fails to provide the information necessary for a consumer to make a knowledgeable UM/UIM coverage decision. Appellants suggest this is contrary to the MVFRL's purpose, given the very detailed notice requirements found in § 1731 and § 1791. Appellants also argue if the legislature intended for an insurance application to satisfy § 1734's writing requirement it would have specifically stated this, as it had the opportunity to do so in its several revisions of the MVFRL, including specific revisions to § 1734.

Appellee argues the insurance application satisfies the plain terms of § 1734—it is a writing signed by the insured requesting an amount of coverage less than the amount of bodily injury coverage. Appellee notes that unlike the detailed form required by § 1731 for an insured to reject UM/UIM coverage, § 1734 does not require any specific form or format. Appellee suggests any claim that appellants were unaware of their coverage designations is belied by appellant's signature on the application immediately below the language stating he read and understood the application, that all statements made were true, and his coverage selections would apply to all policy renewals, continuations, or changes unless he submitted a writing indicating otherwise. Contrary to appellants' claim that the legislature could have specifically stated an application was sufficient for § 1734 purposes, appellee argues if the legislature desired something more than an application, it would have required a specific form, as it did in § 1731.

Although this Court has addressed related issues previously in *Lewis v. Erie Insurance Exchange*, 568 Pa. 105, 793 A.2d 143 (2002), and *Blood v. Old Guard Insurance Co.*, 594 Pa. 151, 934 A.2d 1218 (2007), the case law from the lower courts and the federal courts is muddled.[2] In *Lewis*, we considered

2. For example, *compare Hughes*, at 539 (holding insurance application with UM/UIM coverage designation and insured's signature was suffi-

whether § 1731's strict requirements for declining all UM/UIM coverage also applied to § 1734's request for reduced coverage. There, the insured initially requested bodily injury coverage of $500,000 and UM/UIM coverage of $50,000. The UM/UIM coverage was later modified by a single-page form prepared by the insurer and signed by the insured. A member of the insured's family was injured in a car accident, and the insurer provided $100,000 in coverage after stacking the $50,000 UM/UIM coverage. The insured contended the amount of coverage should be $500,000, the same as the bodily injury coverage, because the insurer's UM/UIM coverage election form did not conform with § 1731.

We held § 1731's requirements were only applicable in situations where UM/UIM coverage was waived; they did not apply to requests for reductions in UM/UIM coverage. In reaching this holding, we stated:

> [I]t is reasonable to conclude that the General Assembly attached the additional requirements to outright waiver/rejection to confer explicit warning upon consumers who chose to drive without any financial protection from injury on account of uninsured or underinsured motorists. Further, ... requests for specific limits coverage, in contrast to outright waiver/rejection, require not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion.

*Lewis*, at 153. We also quoted *Leymeister v. State Farm Mut. Auto. Ins. Co.*, 100 F.Supp.2d 269, 272 (M.D.Pa.2000), for the proposition that "[t]he language of Section 1734 is clear on its face; all that is required to request lower limits of coverage is a writing requesting the same from a named insured." *Lewis*, at 153.

cient for § 1734's purposes), *with Brethren Mutual Insurance Company v. Triboski–Gray*, 584 F.Supp.2d 687, 697 (M.D.Pa.2008) (holding insurance application containing UM/UIM coverage limits and insured's signature was insufficient for § 1734's purposes). Both parties cite other non-controlling cases which we need not discuss further.

In *Blood,* the insured applied for $500,000 in bodily injury coverage and $35,000 in UM/UIM coverage. The insured later lowered the bodily injury coverage to $300,000, but did not select a different amount of UM/UIM coverage. After an accident, the insured requested payment, and the insurer offered $105,000, representing the $35,000 UM/UIM coverage stacked for three vehicles. The insured claimed $900,000 was due—the amount of bodily injury coverage, $300,000, stacked for three vehicles. The insured alleged the change in bodily injury coverage was akin to a new application for insurance, and, since no UM/UIM coverage was selected and a UM/UIM reduction form was not provided, the UM/UIM coverage should have defaulted back to the bodily injury limits pursuant to § 1734. Finding § 1734 to be plain and unambiguous, we held the insured's initial application indicating reduced UM/UIM coverage satisfied § 1734's writing requirement and remained effective after a reduction in bodily injury coverage.

Consistent with both *Lewis* and *Blood,* we reiterate the language of § 1734 is plain and unambiguous. Section 1734 states, "A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope, and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa.C.S. § 1734. Despite the legislature's detailed requirements for rejecting UM/UIM coverage in 75 Pa.C.S. § 1731, there are no such requirements in § 1734. Indeed, as we held in *Lewis,* a § 1734 written request must include "not only the signature of the insured, but also, an express designation of the amount of coverage requested...." *Lewis,* at 153. Clearly, the most effective manner in which to "expressly designate" the amount of coverage requested is by electing a specific dollar amount on an insurance application.

Furthermore, any confusion regarding UM/UIM coverage is naturally rectified through the application process itself. An insurance company is only required to *offer* UM/UIM coverage in an amount equal to the insured's bodily injury coverage, which an insured is free to either reject or accept. If the insured desires the coverage, he must then select which level

of coverage he desires. If the insured wants UM/UIM coverage in an amount equal to his bodily injury coverage, he can select that option and pay the corresponding premium. If, as in the present case, the insured did not desire UM/UIM coverage identical to bodily injury coverage, he could select a lesser amount and pay a reduced premium.[3] It is difficult to fathom that an insurance applicant who willingly selects reduced UM/UIM coverage would somehow rescind that selection if merely informed the insurance company had to offer coverage in the same amount as bodily injury coverage. It is not as if the insurance company is hiding free, additional coverage; the cost of premiums could increase significantly, which, presumably, is what the applicant was hoping to avoid by initially requesting the reduced coverage.

Accordingly, we hold the insurance application in question here satisfies § 1734's writing requirement as it clearly indicated appellants' desire for reduced UM/UIM coverage, and was signed by the insured. There may be a more detailed way of satisfying the "writing" requirement, but it is unnecessary given the simple language of § 1734 and the manner in which insurance coverage amounts are selected. Though it is laudable for insurance companies to provide additional information regarding UM/UIM insurance beyond what is found in the application, we see no purpose in requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage. The decision of the Superior Court is affirmed.

Order affirmed.

Chief Justice CASTILLE and Justice ORIE MELVIN join the opinion.

3. Although not dispositive in this case, this argument is even more compelling here as the amounts of UM/UIM were handwritten on the application, suggesting the amount of coverage desired was discussed and considered by appellants prior to making their selection. Furthermore, appellants appear to have amended their insurance coverage twice in the year prior to the accident, but never questioned the amount of UM/UIM coverage.

Justice SAYLOR files a concurring opinion in which Justice TODD joins.

Justice BAER files a dissenting opinion in which Justice McCAFFERY joins.

Justice SAYLOR, concurring.

I join the majority opinion subject to the following observations.

Section 1734 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1734, only sets forth the minimum requirements necessary for a valid UM/UIM sign-down of coverage to limits below those applicable to bodily injury liability. The type of notice that an insured who selects such coverage must have concerning an insurer's obligation to offer more is a separate matter, as is the form in which the insurance company may make the offer. Here, Appellants' complaint, as presented to the common pleas court, does not contain any allegation based on the lack of a Section 1791 "Important Notice." *See id.* § 1791, *quoted in* Majority Opinion, 391–92 n. 1, 15 A.3d at 898 n. 1; *see generally Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 123, 793 A.2d 143, 153 (2002) ("Section 1791 of the MVFRL occupies a central role as it concerns the conveyance of information regarding, *inter alia,* the insurer's obligation to offer UM and UIM coverage of up to at least $100,000 per person and $300,000 per accident, and of the insured's option to purchase coverage carrying lower benefit limits."). Rather, the complaint merely asserts that "no offer of options or 'sign down' forms" were provided to Appellants, resulting in the lack of a "proper offer" for the lower limits appearing on the application. Complaint at 4 ¶ 12. Moreover, although Appellants apparently referred to Section 1791 in their advocacy before the Superior Court, that court found any issue predicated upon the lack of a Section 1791 notice to be waived for lack of development, *see Orsag v. Farmers New Century Ins.*, No. 2659 EDA 2008, *slip op.* at 12 n. 5, 981 A.2d 946 (Pa.Super. July 29, 2009), and the propriety of such ruling is not presently before this Court.

That being the case, and particularly in light of the circumscribed question accepted for review, *see* Majority Opinion, at 393, 15 A.3d at 899 (quoting *Orsag v. Farmers New Century Ins.*, 604 Pa. 459, 986 A.2d 128 (2009) (*per curiam*)), the present appeal is substantially limited in scope and does not involve any issue pertaining to Appellants' notice regarding their options, including the adequacy of the offer provided by Appellee. Instead, it is constrained to the question of whether the application that Appellants executed was legally sufficient to constitute a written request for purposes of Section 1734.[1] I share some of the dissent's concerns regarding the nature of the offer given to Appellants, *see* Dissenting Opinion, at 404–06, 15 A.3d at 904–07 (comparing the present application, and the one at issue in *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732 (Pa.Super.2009), with those involved in *Lewis* and *Hartford Insurance Co. v. O'Mara*, 907 A.2d 589 (Pa.Super.2006)); *see generally Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 664, 702 A.2d 1038, 1041 (1997) (acknowledging the insurer's legal obligation to make appropriate offers), and under other circumstances, I might find that a factual issue pertaining to its adequacy was presented for resolution through evidentiary development. Here, however, I ultimately conclude the dissent's reasoning imports issues pertaining to Appellants' notice into the distinct question of the adequacy of their written request.

Finally, I am unable to agree with the dissent's contention that the present holding renders Section 1734's requirement of a written request "mere surplusage." Dissenting Opinion, at 409, 15 A.3d at 908. By its terms, Section 1734 only requires that the request for specified UM/UIM coverage be in writing and made by the insured. A signed application requesting such coverage plainly satisfies that requirement. The "surplusage" argument, moreover, rests on the assertion that every contract for auto insurance in Pennsylvania is made in

1. In this regard, I would not find it necessary to address whether a signed application constitutes the "most effective manner" of forwarding such a request, Majority Opinion, at 396, 15 A.3d at 900–01 —as compared to, say, an amendatory rider dedicated to specifying lower

writing via an application containing a provision for UM/UIM coverage, and that every such application is completely filled in—that is, that none of the spaces are ever left blank, accidentally or otherwise. *See id.* ("It is beyond cavil that all applications, both before and after the enactment of Section 1734, included designations of the amounts of coverage and the signature of the insured."). This seems unlikely to me, and it is noteworthy that the dissent does not provide any support for this factual claim.[2]

Justice TODD joins this concurring opinion.

Justice BAER, dissenting.

As noted in the Majority Opinion, we granted review in this case to consider whether a signed application for motor vehicle insurance, which merely identifies the relevant coverage limits, is sufficient to satisfy the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), which provides that "[a] named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa.C.S. § 1734. I respectfully dissent from the Majority's conclusion that the application is sufficient, and instead conclude that the generic application, without more, does not satisfy the writing requirement of Section 1734.

The parties do not dispute the facts of this case. According to the complaint, in January 2002, Plaintiff Jeffrey Orsag signed a two-page application to obtain motor vehicle insurance coverage from Defendant Farmers New Century Insurance. The first page identifies the applicants, Plaintiffs Jeffrey and Kimberly Orsag, lists the two vehicles to be insured,

coverage—but only whether it satisfies the statutory requirement of a written request.

**2.** Further, the "surplusage" argument, if applied consistently, would mean that a separate writing would be required for *any* UM/UIM coverage, including coverage at the same level as personal injury liability. *See* 75 Pa.C.S. § 1734 (permitting a named insured to request in writing UM and UIM coverage "in amounts *equal to* or less than the limits of liability for bodily injury" (emphasis added)); *see also id.* § 1736 (prohibiting UM/UIM coverage in amounts greater than the limits of liability for bodily injury). This result would, in my view, be unreasonable because, if that had been the Legislature's intent, it would likely have said so more directly.

and includes a section detailing the coverages and premiums. The coverages section was completed by hand to indicate bodily injury liability coverage of $100,000 per person and $300,000 per accident, and uninsured and underinsured motorist coverage ("UM/UIM coverage") of $15,000 per person and $30,000 per accident.

The second and final page of the application contains sections relating to the applicants' employment, their prior insurance, and sixteen questions relating to the condition of the cars and the drivers. The final section on the second page is entitled "Binder/Signature" and contains seven sub-sections outlined in separate boxes. The final statement avers, "I understand that the coverage selection and limit choices indicated here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing." Plaintiff signed and dated that application at the bottom of these statements.

In November 2002, Plaintiff Jeffrey Orsag was involved in a motor vehicle accident. Plaintiffs received consent from Defendant to settle the underlying case with the tortfeasor involved in the accident. When the tortfeasor's insurance did not cover all of Jeffrey's claims, Plaintiffs sought UIM benefits from Defendant. Pursuant to the language of the insurance application discussed above, Defendant tendered $15,000 in UIM benefits.

In March 2008, Plaintiffs filed a complaint in Chester County Court of Common Pleas asserting that, pursuant to the MVFRL, Defendant should have paid $100,000 of UIM benefits. Given that Plaintiffs contracted for $100,000 of bodily liability coverage, they contended that Defendant should have offered UM/UIM coverage equal to that amount and provided that coverage absent a "request in writing" for a lesser amount of UM/UIM coverage. 75 Pa.C.S. § 1734. Plaintiffs averred that nothing in the policy application constitutes the written request contemplated in Section 1734. Plaintiffs sought reformation of the insurance policy to provide $100,000, the amount of coverage required absent a proper Section 1734 written request.

Defendant filed preliminary objections to the complaint in the nature of a demurrer, asserting that Plaintiffs failed to state a claim upon which relief could be granted. Defendant contended that the policy application met the written request requirement of Section 1734. Agreeing with the Defendant, the trial court sustained the preliminary objections and dismissed the complaint with prejudice.

In July 2009, the Superior Court affirmed the decision of the trial court that the two-page insurance application satisfied the written request requirement of Section 1734. The Superior Court acknowledged that the MVFRL requires insureds desiring reduced UM/UIM coverage to seek such reduction through a written request, but also contrasted the open-ended language of Section 1734 with the very specific requirements for complete waiver of UM/UIM coverage which requires the use of a form set forth in Section 1731.[1] The Superior Court concluded that the signed two-page application in this case constituted a writing that evidenced Plaintiffs' desire to purchase UM/UIM coverage in amounts less than the default amount provided by the MVFRL, and thus was sufficient to satisfy the written request requirement of Section 1734. Judge Klein filed a brief concurring opinion in which he agreed that the law required the court to affirm the dismissal of Plaintiffs' complaint on the preliminary objections raised, but expressed hope that "our Supreme Court will re-examine this issue and require a bit more information so that purchasers of insurance can make the most informed, and thus, best decisions." Super. Ct. Mem. Op. at 1 (Klein, J., concurring).

Plaintiffs sought review in this Court, which we granted limited to the following question:

If an insured signs an insurance application that contains lowered uninsured/underinsured motorist coverage limits, is that signature alone sufficient to meet the requirements of

1. 75 Pa.C.S. § 1731 requires specific language for the rejection of UM/UIM coverage. Additionally, the section provides for placement of the waivers on separate sheets of paper in prominent type and location. 75 Pa.C.S. § 1731(c.1). If the requirements of Section 1731 are not met, the waiver is void. *Id.* (c.1).

Section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law?

As this question presents a purely legal issue, our standard of review is *de novo* and our scope of review is plenary. *In re Novosielski*, 605 Pa. 508, 992 A.2d 89 (2010).

Although we have not previously defined the requirements for a sufficient Section 1734 written request, we have considered Section 1734 before. In *Lewis v. Erie Insurance Exchange*, 568 Pa. 105, 793 A.2d 143 (2002), we were asked to determine whether Section 1734 required compliance with the strict waiver provisions of Section 1731. We described the relevant application language as completed in *Lewis:*

> Mr. Lewis's signature appears on the form in both the UM and UIM sections within the blocks labeled "Reduced Limits of [UM/UIM] Motorist Protection," and providing as follows:
>
>> By signing this waiver, I am rejecting [UM/UIM] coverage limits equal to my bodily injury liability limits. I knowingly and voluntarily select uninsured motorist coverage limits lower than my bodily injury limits. Instead, I select the following limit(s):
>>
>> $50,000 each person $100,000 each accident.

*Id.* at 144. I emphasize that the language in *Lewis* was substantially more informative of the MVFRL's default coverage provisions than is the language in the application at bar. In *Lewis*, we concluded that the strict requirements of Section 1731 applied only to situations involving the refusal of UM/UIM coverage and were not required for reduction of UM/UIM coverage. We noted, "[R]equests for specific limits coverage, in contrast to outright waiver/rejection, require not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion." *Id.* at 153. This language has been interpreted by the Superior Court and the federal courts to require a Section 1734 written request to include a signature of the insured and an express designation of the UM/UIM coverage limit selected. Additionally, some courts also re-

quire demonstration of an intent to reduce the UM/UIM coverage below the coverage for bodily injury liability. *Id.* The decisions of these courts turn on factual distinctions regarding the completed application forms involved in each case, which I now review.

In *Motorists Insurance Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995), the Superior Court found that the insurance form as completed did not satisfy Section 1734's requirement that the insureds execute a written request for reduction of UM/UIM coverage. The application in *Emig* included two sections relevant to Section 1734. First, the form contained a section similar to that in the case at bar, indicating the amounts of coverage for bodily injury and UM/UIM coverage. In this section of the form, the word "reduced" was handwritten near the designated UM/UIM coverage amounts. Critical to the Superior Court's decision however, was a second section entitled UIM Rejection/Reduction, which was left entirely blank. The court concluded that the first section, indicating only the amounts of coverage, could not constitute a Section 1734 written request for reduction given the presence of the blank second section that clearly was for the purpose of providing a Section 1734 written request for reduction of UM/UIM coverage. The court held that the signature at the end of the insurance policy application "merely evidences the insured['s] acceptance of the policy" and "cannot amount to a statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits." *Id.* at 565 (internal citation omitted).

In a case distinguishable from *Emig* and the instant case, the Superior Court in an *en banc* decision in *O'Mara,* 907 A.2d 589, held that an insured's signature on the specific application involved satisfied the written request requirement of Section 1734. Specifically, the signed application form in *O'Mara* provided in relevant part:

**Uninsured and Underinsured Motorist Coverage Options**
Uninsured and Underinsured Motorist Coverages are optional in Pennsylvania. However, we are required by law to include these coverages unless you reject them in writing.

We recommend you include both coverages in your policy limits equal to your Liability limits. Your self-protection and that of your passengers should equal the protection you provide others.

\*     \*     \*

If you choose to include Uninsured and/or Underinsured Motorist Coverage in your policy, please indicate the coverage limits you desire below. If you wish to reject one or both of these coverages entirely, please refer to **Step B** and **Step D** on the sheet titled **How To Select Your Coverages.**

**Uninsured and Underinsured Motorist Coverage Selections**

Use this sheet to select your coverage limits. To reject these coverages, you must sign and return the form titled **Rejection of Uninsured Motorist Protection** and/or the form titled **Rejection of Underinsured Motorist Protection.** If you do not make a selection for these coverage limits, your policy will include limits equal to your Liability limits (unless you have returned the rejection form).

**Uninsured Motorist Coverage limits**

[ ] Maximum amount available (an amount equal to the Liability limits of your policy).

[ ] The following specific amount $ ___ /$ ___

[ ] Minimum amount available ($15,000 per person/$30,000 per accident).

**Underinsured Motorist Coverage limits**

[ ] Maximum amount available (an amount equal to the Liability limits of your policy).

[ ] The following specific amount $ ___ /$ ___

[ ] Minimum amount available ($15,000 per person/$30,000 per accident).

*O'Mara,* 907 A.2d at 597–598 (emphasis in original). The above-language in the *O'Mara* policy, which was fully completed and signed in the appropriate places by the insured, provided the detailed and specific information that I find lacking from the application in the case at bar.

Recently, in *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732 (Pa.Super.2009), the Superior Court held that an insurance application did not meet the requirements of a Section 1734 written request. Citing *O'Mara* and this Court's decision in *Lewis*, the Superior Court summarized its view of the test for a Section 1734 written request: "[T]he writing must: (1) manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) be signed by the named insured; and (3) include an express designation of the amount of uninsured and underinsured coverage requested." *Id.* at 737 (internal quotation marks omitted). In *Larrimore*, the insured signed an eight-page application and a Section 1791 Important Notice.[2] The court described the facts presented in the case:

> The second page of the application set forth that the coverage applied for included the following: Bodily Injury Liability coverage in the amount of $300,000.00 per person and $300,000.00 per accident; Uninsured Motorist ("UM") Bodily Injury coverage in the amount of $15,000.00 per person and $30,000.00 per accident, unstacked; and Underinsured Motorist ("UIM") Bodily Injury coverage in the amount of $15,000.00 per person and $30,000.00 per accident, unstacked. This coverage limits information was inserted in the application by the agent before the application was presented to Donna Larrimore for signature. The eighth page of the application contained the following language immediately preceding the applicant's signature: I certify that I have given true and complete answers to the questions in this application. I also certify that I have been offered alternative coverage limits and those listed on this application reflect my choices.

*Id.* at 734.

The court noted that Erie generally employed a special form for insureds who wished to request·lower UM/UIM

**2.** The relevant text of Section 1791 is set forth in the Majority Opinion. *See* Maj. Op. at 391–92, n. 1, 15 A.3d at 898, n. 1.

limits, but did not use the form in the case; the unused Erie form included the following language:

> By signing this form, I am requesting for myself and members of my household underinsured motorist coverage in an amount less than the limits of my bodily injury liability coverage. I am knowingly and voluntarily rejecting underinsured motorist coverage in an amount equal to my bodily injury liability limits. Rather, I am requesting the following amount of underinsured motorist coverage:

*Id.* at 735. The Superior Court concluded that this special form would have met Section 1734, which it viewed as requiring that "the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits." *Id.* at 740. Unlike the special form, the court concluded that the actual application in *Larrimore* did not meet this test.

The federal district courts have also considered whether insurance documents satisfy Section 1734. In *State Farm Mutual Auto. Insurance Company v. Hughes,* 438 F.Supp.2d 526 (E.D.Pa.2006), the court found the documents involved sufficient. In *Hughes,* the application not only utilized coverage sections similar to the application in this case but also included a separate form entitled "Acknowledgement of Coverage Selection." Similar to the documents used by the insurers in *Lewis, Emig,* and *O'Mara* and referenced in *Larrimore,* the Acknowledgement of Coverage Selection in *Hughes* explained UM/UIM coverage and indicated that UM/UIM coverage "must be written at limits equal to the Bodily Injury limits unless the named insured selects lower limits." *Hughes,* 438 F.Supp.2d at 529. Although the federal court concluded that the application, in and of itself, was sufficient because it contained the amount of UM/UIM coverage, the amount of bodily injury coverage that was greater than the UM/UIM coverage, and the insured's signature, I would have held that the application was sufficient only when viewed in conjunction with the Acknowledgment of Coverage, as both

documents were necessary to demonstrate the intent of the insured to select lower UM/UIM limits.

Finally, in *Brethren Mutual Insurance Company v. Triboski–Gray*, 584 F.Supp.2d 687 (M.D.Pa.2008), the federal district court considered whether an insurance application met the requirements of Section 1734, where the application mirrored the two-page document at issue in the case at bar, and additionally provided a Section 1791 Important Notice. The federal district court found the application insufficient for purposes of Section 1734.

The above-cited cases present a range of potentially sufficient Section 1734 written requests for reduced UM/UIM coverage, and I agree with the Majority that "it is laudable for insurance companies to provide additional information regarding UM/UIM insurance beyond what is found in the application" in the case at bar. Majority Opinion at 397, 15 A.3d at 901. Unlike the Majority, however, I view the additional information to be required for a sufficient Section 1734 written request for the reasons discussed below.

All agree that the legislature intended that, absent a Section 1734 written request, an insurer must issue a policy with UM/UIM coverage equal to the coverage limits of the bodily injury liability of the policy. *See Blood v. Old Guard Insurance Co.*, 594 Pa. 151, 934 A.2d 1218, 1226 (2007). Equally clear, is that the MVFRL does not require a Section 1734 written request for reduced coverage to have the formality of a Section 1731 rejection of UM/UIM coverage. *Lewis*, 793 A.2d at 155. In *Lewis*, we held that a Section 1734 written request must include "not only the signature of the insured, but also, an express designation of the amount of coverage requested, thus lessening the potential for confusion." *Id.* at 153. In my view, the application at issue in this case fails this test and instead increases the potential confusion due to an insured's absence of knowledge regarding the protections in the MVFRL related to UM/UIM coverage. To rectify this potential for confusion, I conclude that a Section 1734 written request must include more than a signature on an application for insurance that provides the coverage amounts. Specifical-

ly, the application must include an indication that the insured intended to contract for UM/UIM coverage limits less than the otherwise statutorily mandated coverage equal to the amount of bodily injury liability coverage.

To hold otherwise would be to conclude that the legislature enacted Section 1734 as mere surplusage. It is beyond cavil that all applications, both before and after the enactment of Section 1734, included designations of the amounts of coverage and the signature of the insured. When the legislature enacted Section 1734 to require a request in writing if an insured desired reduced UM/UIM coverage, it could not have intended to require merely something that was already included in every application. Even though the General Assembly decided not to require as much formality as it did for the absolute rejection of UM/UIM coverage in Section 1731, I conclude that Section 1734 must be read to require a writing that is more than a mere application for coverage, and that an insureds' intention to reduce their UM/UIM limits must be evident from the written request in order to "less[en] the potential for confusion" of the insured. *Lewis*, 793 A.2d at 153, and, more importantly, to meet the statutory scheme established by the Pennsylvania Legislature.

The above-described cases demonstrate that insurance companies are capable of producing with little difficulty and, indeed, regularly utilize such documents. Like my colleagues in the Majority, I encourage that continued practice. Such documents detail the requirements of the MVFRL regarding UM/UIM coverage, permit the insured to indicate his or her choice of UM/UIM limits lower than the chosen bodily injury liability limits, and finally, require a signature in close proximity to these choices. *See Lewis*, 793 A.2d 143; *Larrimore*, 987 A.2d 732; *O'Mara*, 907 A.2d 589; *Emig*, 664 A.2d 559; *Hughes*, 438 F.Supp.2d 526. I agree that the documents, if completed, in all of these cases were sufficient to meet the requirements of Section 1734. I differ from the Majority, however, because I would hold that a document like the application in the case at bar, containing nothing more that the amounts of coverage on page one and the insured's

signature at the policy's end on page two, does not meet the requirements of a written request for reduction in coverage.

Accordingly, I would remand the case to the trial court for entry of an order overruling the Preliminary Objections, and for further proceedings consistent with this opinion.

Justice McCAFFERY joins this dissenting opinion.