**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2924
_____

STEFAN FREETH

v.

ZURICH AMERICAN INSURANCE CO.,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-02274)
District Judge:  Hon. Gerald A. McHugh
_____

Submitted under Third Circuit LAR 34.1(a)
March 14, 2016

Before:  FUENTES, CHAGARES, and RESTREPO, Circuit Judges

(Filed: March 24, 2016 )
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

Defendant Zurich American Insurance Co. ("Zurich") appeals a summary

judgment order entered by the United States District Court for the Eastern District of

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Pennsylvania on July 16, 2015, declaring that Zurich is liable for up to $1,000,000 in uninsured motorist ("UM") insurance coverage in relation to injuries suffered by plaintiff Stefan Freeth. For the reasons that follow, we will affirm.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition. Freeth was seriously injured in September 2012 while working on the back of a truck owned by his employer, Road-Con, Inc. A passing tractor-trailer struck a traffic sign, propelling it into Freeth's leg. Because the tractor-trailer was never identified, Road-Con's business insurance provided UM coverage for Freeth's injuries. That insurance policy was issued by Zurich.

Freeth filed this lawsuit seeking a declaration that the policy provides $1,000,000 in UM coverage. In response, Zurich argued that the policy has a much lower limit of $35,000 in UM coverage because in February 2012, prior to Freeth's injury, Road-Con (through its president) signed an Uninsured/Underinsured Motorists Coverage Selection/Rejection Limits Summary Form ("Summary Form") electing to reduce the UM coverage to $35,000. Freeth argued that the signature on the Summary Form was not a sufficiently clear manifestation of intent to reduce the coverage, especially in light of language in both the Summary Form and the cover letter accompanying it, which warned Road-Con that it was not enough merely to sign and return the Summary Form because it was also necessary to review and sign state-specific forms enclosed with the Summary Form. Thus, argued Freeth, the UM coverage defaulted to the same amount as the bodily injury liability coverage, or $1,000,000, by operation of Pennsylvania law.

2

The parties filed cross-motions for summary judgment. On July 16, 2015, the District Court granted Freeth's summary judgment motion, declaring that Zurich must provide $1,000,000 in UM coverage, and denied Zurich's motion. It reasoned that because Zurich did not enclose, and Road-Con did not sign, any Pennsylvania-specific form designating $35,000 as the amount of UM coverage, the requirements stated in the Summary Form and cover letter for reducing coverage were not met, and coverage defaulted to limits imposed by operation of state law. Zurich timely appealed.

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1332(a)(1), and we have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final decision. "We exercise plenary review over a district court order granting summary judgment." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). "Summary judgment is appropriate when 'the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

## III.

Under 75 Pa. Cons. Stat. § 1731, "an insurance company issuing a policy in the Commonwealth of Pennsylvania must provide [uninsured/underinsured motorist] coverage equal to the bodily injury liability coverage, unless the insured validly rejects UM/UIM coverage or validly requests lower limits of coverage pursuant to section 1734." Weilacher v. State Farm Mut. Auto. Ins. Co., 65 A.3d 976, 983 (Pa. Super. Ct. 2013). Section 1734, in turn, provides that "[a] named insured may request in writing the

3

issuance of coverages . . . in amounts equal to or less than the limits of liability for bodily injury." 75 Pa. Cons. Stat. § 1734. "[T]o conform with § 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits." Weilacher, 65 A.3d at 983 (quoting Nationwide Mut. Ins. Co. v. Catalini, 18 A.3d 1206, 1209 (Pa. Super. Ct. 2011)). Section 1734 does not "dictate[ ] the particular language that the parties must utilize." Hartford Ins. Co. v. O'Mara, 907 A.2d 589, 603 (Pa. Super. Ct. 2006) (en banc). "[T]he language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits and the amount of the requested coverage." Id.

Freeth does not dispute that there was a signed writing (the Summary Form) that contained a table listing "Selected Limits" for "Uninsured/Underinsured Motorists Coverage" in each state, including a limit of $35,000 for Pennsylvania. Rather, he argues that the Summary Form did not constitute a "request" under section 1734 manifesting Road-Con's desire to purchase that amount of coverage. We agree.

Like the District Court, we find it significant that the Summary Form contained the following language, located before the table that listed the proposed amount of reduced coverage for each state:

> Your policy(s) contain Uninsured/Underinsured Motorists Coverage Selection/Rejection and Limits Options forms which allow you to reject coverage or to select various limits and coverage options. Your signature on this summary form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state

4

forms have been accepted by you. This form provides a summary of the selected Limits by State. However, in those states [including Pennsylvania] marked with an asterisk (*), the first named insured must sign that state's selection/rejection form.

Appendix ("App.") 187. Following the table was another proviso:

Failure to return the signed Uninsured/Underinsured Motorist (UM/UIM) Selection/Rejection Summary Form and required state-specific forms prior to the policy inception date(s) will result in the policy being issued with coverage limits imposed by operation of state law. . . . THIS SUMMARY IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE. <u>YOU ARE REQUIRED TO DO SO</u>.

Id. at 188. And by signing, Road-Con "acknowledge[d] that [it] ha[d] reviewed each individual state's selection/rejection form." Id. The cover letter accompanying the forms contained similar warnings. Id. at 255-57.

Road-Con never signed a state-specific Pennsylvania form requesting reduced UM coverage, even though it did so for other states. Thus, to prevail, Zurich must show that the Summary Form by itself constituted a "request," notwithstanding the language in the Summary Form warning insureds that signing the Summary Form was insufficient to effect a reduction in coverage. Zurich fails to do so.

It is true that Road-Con signed and returned three Pennsylvania-specific forms, which dealt with other issues. Id. at 233-35. It could therefore be argued that Road-Con satisfied all the requirements set out in the Summary Form for reducing coverage, insofar as it signed and returned Pennsylvania-specific forms that were included.

But such a reading of the Summary Form is hyper-technical and unnatural. "When analyzing an insurance policy, a court must construe words of common usage in

5

their natural, plain, and ordinary sense." D'Adamo v. Erie Ins. Exch., 4 A.3d 1090, 1096 (Pa. Super. Ct. 2010) (quoting Continental Cas. Co. v. Pro Machine, 916 A.2d 1111, 1118 (Pa. Super. Ct. 2007) (quotation marks omitted). "A court must not 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.'" Id. (quoting Mitsock v. Erie Ins. Exch., 909 A.2d 828, 831 (Pa. Super. Ct. 2006)). To any reasonable reader, the repeated emphatic warnings in the Summary Form would create an expectation that coverage amounts within a given state would be set at levels provided by law unless a form designed and submitted specifically for that state requested otherwise. Zurich need not send such a form to its insureds, nor is such a form required to reduce UM coverage under Pennsylvania law. See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 639 (3d Cir. 2000); Lewis v. Erie Ins. Exch., 793 A.2d 143, 155 (Pa. 2002). But if Zurich warned its insureds that an additional state-specific form was needed to reduce coverage and did not enclose the form (or enclosed it but never received it back), it cannot now prevail on the theory that an insured's signature on the very document that contained the warning was, in the absence of the state-specific form, a sufficient manifestation of intent to reduce coverage. Cf. Stemple v. Zurich Am. Ins. Co., 584 F. Supp. 2d 1304, 1311 (D. Kan. 2008) ("[T]he Summary Form clearly indicates that elections made on individual state forms control what selections or rejections have been made, rather than the Summary Form itself.").

We do not mean to suggest that short summary documents akin to the Summary Form can never suffice to reduce coverage under section 1734; they can suffice. See Orsag v. Farmers New Century Ins., 15 A.3d 896, 897, 901 (Pa. 2011) (enforcing a

6

coverage reduction where an insured wrote desired coverage amounts on blanks on a two-page "mostly pre-printed" insurance application). Nor does our conclusion rest on Freeth's contention that Pennsylvania law requires insureds to perform an "affirmative act" of writing beyond signing a preprinted document (such as handwriting the desired dollar amount of coverage, or placing checkmarks or initials immediately beside the dollar amounts) in order to manifest their intent to reduce UM coverage. There is some support for that view among non-binding authorities,[1] but other cases suggest otherwise,[2] and the Pennsylvania Supreme Court has not, to our knowledge, spoken directly to the issue.[3] In any event, this case does not require us to opine on the matter. Even if the mere act of signing a document like the Summary Form would ordinarily suffice to reduce coverage, it did not suffice here for the reason already given — namely, that language on the Summary Form itself clearly and repeatedly stated that signing the Summary Form was insufficient to effect a reduction in coverage.

## IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

[1] Brethren Mut. Ins. Co. v. Triboski-Gray, 584 F. Supp. 2d 687, 690-91, 694-97 (M.D. Pa. 2008); Erie Ins. Exch. v. Larrimore, 987 A.2d 732, 734-42 (Pa. Super. Ct. 2009).

[2] Davis v. Allstate Prop. & Cas. Co., No. 13-CV-07038, 2014 WL 4857434, at *6-7 (E.D. Pa. Sept. 30, 2014); State Farm Mut. Auto. Ins. Co. v. Hughes, 438 F. Supp. 2d 526, 535-39 (E.D. Pa. 2006).

[3] In Orsag, the Pennsylvania Supreme Court noted that the use of handwritten markings, though relevant to the issue of intent, was not dispositive. 15 A.3d at 901 n.3 ("Although not dispositive in this case, this argument is even more compelling here as the amounts of UM/UIM were handwritten on the application, suggesting the amount of coverage desired was discussed and considered by appellants prior to making their selection.").