**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS

———————

No. 18-3066

———————

FARMLAND MUTUAL INSURANCE COMPANY

v.

DEBRA LYNN SECHRIST, Administrator of the estate of Defendant Edward Alfred
Sechrist; GARY BRYANT KAUFFMAN, H/W; DELORES KAUFFMAN, H/W,
Appellants

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:16-cv-01111)
District Judge: Honorable Yvette Kane

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 5, 2019

———————

Before: CHAGARES and HARDIMAN, *Circuit Judges*, and GOLDBERG, *District
Judge**

(Filed: May 2, 2019)

———————

OPINION⁺

———————

_____
\*      The Honorable Mitchell S. Goldberg, United States District Judge of the United
States District Court for the Eastern District of Pennsylvania, sitting by designation.
⁺      This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7., does
not constitute binding precedent.

GOLDBERG, *District Judge*.

After Appellants Edward Alfred Sechrist and Gary Bryant Kauffman (the "Employees") were involved in a serious accident while driving a vehicle for their employer, Clouse Trucking, they sought to collect underinsured motorist benefits[1] from Appellee, Farmland Mutual Insurance Company ("Farmland"), their employer's commercial automobile insurer.

At issue in the District Court was the amount of underinsured motorist coverage provided under Farmland's policy. The Employees urged that the policy should be reformed to provide $1,000,000 of underinsured coverage. Farmland disagreed, contending that the policy provided $35,000 of underinsured motorist coverage. In deciding the cross-motions for summary judgment, the District Court found in favor of Farmland, concluding that Clouse Trucking had elected a lower amount of underinsured motorist coverage pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. § 1701 *et seq*.

For the following reasons, we will affirm the District Court's grant of summary judgment in favor of Farmland.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The accident in question occurred on April 30, 2013. The parties agreed that the Employees were driving during the course of their employment in a vehicle that was

---

[1]     Underinsured motorist coverage "provide[s] protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa. Cons. Stat. § 1731(c).

owned by Clouse Trucking, and insured by Farmland. After the accident, the Employees filed a claim with Farmland for underinsured motorist benefits, alleging that the tortfeasors' insurance was insufficient to cover their losses and damages.

The controlling policy was procured by Clouse Trucking on June 30, 2011. In the District Court, the parties agreed that the following documents were relevant and controlling: (a) the Farmland Policy Application, (b) the Underinsured Motorist Coverage Selection Form, and (c) the Important Policy Notice Concerning Available Benefits and Limits.

The Farmland Policy Application clearly reflects that Clouse Trucking applied for $1,000,000 of CSL bodily injury coverage,[2] and $35,000 of underinsured motorist coverage. This form was signed by J. Edward Clouse, the owner of Clouse Trucking.

The facts gleaned from the Underinsured Motorist Selection Form are not as clear. This form, also signed by J. Edward Clouse, contained a box at the top labeled "Underinsured Motorist Coverage Limit Offered." There, a handwritten notation stated "35,000." (J.A. 256.) By all accounts, the number written into this box should not have been $35,000, but rather $1,000,000, as that number was the "Underinsured Motorist Coverage Limit Offered." Beneath the box, the form states:

> Underinsured Motorist Coverage is available in amounts equal to or less than the limits of liability for bodily injury.

---

[2]     CSL stands for "Combined Single Limit" liability insurance, whereby the insurer agrees to pay a set amount for all damage in a single accident. This type of insurance policy protects all types of damages up to the set amount, regardless of the actual amounts of each individual type of damage (i.e., personal injury, accident damage, and personal property damage).

(J.A. 256.)

In the middle section of the Underinsured Motorist Selection Form, the Insured is provided with two options, as follows:

> Selection of Underinsured Motorist Coverage Limits: Underinsured Motorist Coverage is available in amounts equal to or less than the limits of liability for bodily injury. However, the limits may not be less than the minimum bodily injury limits required by Pennsylvania law ($15,000 each person / $30,000 each accident split limits).
>
> If you want Underinsured Motorist Coverage, please indicate the coverage limits you want by placing an "X" in the appropriate box and then sign and date where appropriate.
> □ I want Underinsured Motorist Coverage with limits equal to my Bodily Injury Liability limits.
> □ I want Underinsured Motorist Coverage with limits lower than my Bodily Injury Liability limits as indicated below:

(J.A. 256.) Clouse Trucking selected the second option, indicating that it wanted "Underinsured Motorist Coverage with limits lower than my Bodily Injury Liability limits." (J.A. 256.) While the Insured was to then select one of the boxes to indicate the selection of the coverage amount, it is unclear what amount was selected because a sticky note obscures several of the boxes.

Finally, the Important Policyholder Notice, also signed by J. Edward Clouse, indicates that he understood that Farmland provided "[un]insured, underinsured, and bodily injury liability coverage up to at least $100,000." (J.A. 251.) This Notice mirrors the notice set forth in 75 Pa. Cons. Stat. § 1791.

Based upon these documents, Farmland paid a total of $35,000 in underinsured motorist benefits to the Employees, reasoning that Clouse Trucking had validly "waived" underinsured motorist coverage equal to the bodily injury liability coverage (which was

4

$1,000,000), and instead clearly selected underinsured motorist coverage of $35,000. The Employees, however, demanded $1,000,000 in underinsured motorist benefits, arguing that Clouse Trucking's waiver of the $1,000,000 bodily injury amount was invalid and unenforceable because it did not comply with the MVFRL.

Unable to resolve this dispute, Farmland brought a declaratory judgment action against the Employees in the District Court, seeking a determination of its obligations under the MVFRL related to the underinsured motorist coverage. After the parties filed cross motions for summary judgment, the District Court granted summary judgment in favor of Farmland, finding that the Farmland Policy Application was a valid written request by Clouse Trucking for lower underinsured motorist coverage pursuant to MVFRL Section 1734. The Employees have appealed, urging that Clouse Trucking's purported selection of $35,000 in underinsured motorist coverage was invalid pursuant to the MVFRL.

## II.    LEGAL STANDARD

"We exercise plenary review over a district court's grant of summary judgment." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. ANALYSIS[3]

### A. The Selection of Underinsured Motorist Coverage Pursuant to Section 1734

The Employees argue that the District Court's order granting summary judgment to Farmland must be reversed because the election of underinsured motorist coverage below the amount offered did not comply with the requirements of MVFRL Section 1731. Specifically, the Employees argue that Farmland failed to offer underinsured motorist coverage equal to the liability coverage because the "Underinsured Motorist Coverage Selection Form" contained a box that listed the "Underinsured Motorist Coverage Limit Offered" as "35,000," wherein it should have read "1,000,000" (i.e., the amount of the bodily injury liability coverage). (J.A. 256.)

Farmland responds that the MVFRL does not require any specific waiver form or language to elect the lower coverage and, consequently, the signed Farmland Policy Application satisfies the requirements of the MVFRL.[4] Farmland points out that the Farmland Policy Application clearly states: "CSL" liability limit of "$1,000,000" and "CSL" underinsured motorist coverage of "$35,000." (J.A. 247–48, 259–60.)

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[4] The parties use the term "waiver" to describe the election of underinsured motorist coverage in an amount less than the bodily injury liability coverage, pursuant to MVFRL Section 1734. However, Section 1734 does not reference that term and instead states that "[a] named insured may request in writing the issuance of coverages under section 1731 . . . in amounts equal to or less than the limits of liability for bodily injury." 75 Pa. Cons. Stat. § 1734. Accordingly, we find the parties' use of "waiver" to be somewhat confusing, and will instead use terms consistent with the language of Section 1734, such as "request" or "election."

6

The MVFRL requires every motor vehicle insurance policy issued in Pennsylvania to include an offer of both uninsured and underinsured motorist coverage equal to the bodily injury liability amount. 75 Pa. Cons. Stat. § 1731(a). However, the purchase of such coverage is "optional," such that the insured can select one of the three options: (a) purchase underinsured motorist coverage equal to the bodily injury liability amount (i.e., the default option); (b) waive underinsured motorist coverage completely under Section 1731(c); or (c) elect underinsured motorist coverage in an amount less than the bodily injury liability coverage amount under Section 1734.

If an insured decides not to purchase any uninsured or underinsured motorist benefits, the insured is required to complete a written waiver that must "specifically comply" with the statutorily-provided forms. 75 Pa. Cons. Stat. § 1731(c). In other words, the waiver form cannot differ at all from the forms provided in Section 1731.

Alternatively, if an insured decides to elect underinsured motorist coverage in an amount less than the bodily injury liability coverage, the insured is required to complete a written request. 75 Pa. Cons. Stat. § 1734. Unlike the strict requirements of fully waiving coverage under Section 1731, the election of a lower amount of coverage under Section 1734 can take any form, so long as it contains the following: "the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits." Weilacher v. State Farm Mut. Auto. Ins. Co., 65 A.3d 976, 983, 986 (Pa. Super. Ct. 2013) (quoting Nationwide Mut. Ins. Co. v. Catalini, 18 A.3d 1206, 1209 (Pa. Super. Ct. 2011)).

"Despite the legislature's detailed requirements for rejecting [uninsured motorist and underinsured motorist] coverage in [Section 1731], there are no such requirements in § 1734." Orsag v. Farmers New Century Ins., 15 A.3d 896, 901 (Pa. 2011). "[A] § 1734 written request must include 'not only the signature of the insured, but also, an express designation of the amount of coverage requested.' Clearly, the most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application." Id. (quoting Lewis v. Erie Ins. Exch., 793 A.2d 143, 153 (Pa. 2002)).

In Orsag, the insured signed a pre-printed application that requested bodily injury liability coverage of $100,000, uninsured motorist coverage of $15,000, and underinsured motorist coverage of $15,000. Id. at 897. Immediately above the applicant's signature, the application included language stating: (a) "I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true," and (b) "I understand that the coverage selection and limit choices here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing." Id.

This case is analogous to Orsag because Clouse Trucking signed a pre-printed application requesting bodily injury coverage of $1,000,000, uninsured motorist coverage of $35,000, and underinsured coverage of $35,000. The application was signed, dated, and contained both a clause that the application was true under threat of penalty, and a clause that the selections apply to future renewals unless the insurer was notified in writing.

The Employees attempt to distinguish this case from <u>Orsag</u> because the insured in <u>Orsag</u> filled out the application amounts by hand, whereas Clouse Trucking did not. This argument is unavailing because all that is required under the MVFRL is a written request, signed by the insured, and an "express designation of the amount of coverage requested." <u>Weilacher v. State Farm Mut. Auto. Ins. Co.</u>, 65 A.3d 976, 983, 986 (Pa. Super. Ct. 2013). Moreover, "under Pennsylvania law, a[n] [uninsured motorist and underinsured motorist] reduction request does not fail merely because an insurance agent filled out the coverage amounts on the form." <u>See</u> <u>Davis v. Allstate Prop. & Cas. Co.</u>, No. 13-CV-07038, 2014 WL 4857434, at *6 (E.D. Pa. Sept. 30, 2014) (citing <u>State Farm Mut. Auto. Ins. Co. v. Hughes</u>, 438 F. Supp. 2d 526, 536 (E.D. Pa. 2006)).

The Employees' reliance on <u>Erie Ins. Exch. v. Larrimore</u>, 987 A.2d 732 (Pa. Super. Ct. 2009) also does not undermine the District Court's decision. In <u>Erie</u>, the Pennsylvania Superior Court refused to enforce a coverage reduction where the policyholder signed the application, but did not sign the insurer's stand-alone form. Here, Clouse Trucking actually signed a stand-alone form, selecting the box that stated: "I want Underinsured Motorist Coverage with limits lower than my Bodily Injury Liability Limits." (J.A. 256.) Because it is not clear what coverage amount was selected on this selection form, given that a sticky note tab obstructed the view, the District Court properly found that the Farmland Policy Application was the operative document. And, two years after <u>Erie</u>, the Pennsylvania Supreme Court clarified that "the most effective manner in which to 'expressly designate' the amount of coverage requested is by electing

9

a specific dollar amount on an insurance application." Orsag v. Farmers New Century Ins., 15 A.3d 896, 901 (Pa. 2011).[5]

The Farmland Policy Application clearly reflected a waiver of $1,000,000 in underinsured motorist coverage, and an election of the lesser amount of $35,000. The requirements under Section 1734 of the MVFRL that the request be signed and contain an express designation of the amount of coverage were clearly met. As such, the District Court properly granted summary judgment in favor of Farmland.

## B. Patent Ambiguity

The Employees also argue that the policy contains a patent ambiguity because the "Underinsured Motorist Coverage Selection Form" contained a box that listed the "Underinsured Motorist Coverage Limit Offered" as "35,000," whereas the MVFRL required Farmland to offer underinsured motorist coverage equal to the bodily injury liability coverage (i.e., $1,000,000). The District Court found that this argument "is merely an invitation to find ambiguity where none exists," and "decline[d] to find that

---

[5]     The Employees' other citations are likewise distinguishable. See, e.g., Freeth v. Zurich Am. Ins. Co., 152 F. Supp. 3d 420, 429 (E.D. Pa. 2015) (finding that there was no waiver pursuant to § 1743 because the operative document explicitly required the insured to sign a state-specific election or rejection form, and contained the disclaimer that "THIS SUMMARY FORM IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE. YOU ARE REQUIRED TO DO SO"), aff'd, 645 F. App'x 169 (3d Cir. 2016); Weilacher v. State Farm Mut. Auto. Ins. Co., 65 A.3d 976, 986 n.1 (Pa. Super. Ct. 2013) ("[I]f an insured purchases new [uninsured motorist and underinsured motorist] coverage following an initial rejection of [uninsured motorist and underinsured motorist] coverage, the insurer must provide [uninsured motorist and underinsured motorist] coverage equal to the bodily injury liability coverage, unless the insured validly requests lower limits of coverage pursuant to section 1734.").

10

under general principles of contract law that ambiguity as to the amount of coverage offered on one page of a 200 page insurance contract, but not selected, requires this Court to construe the Farmland Policy as providing $1,000,000 of underinsured motorist benefits." (J.A. 27.) We agree.

We recognize that the Underinsured Motorist Coverage Selection Form and the application form completed could be read to create an incongruity because the "Underinsured Motorist Coverage Selection Form" contained a box that listed the "Underinsured Motorist Coverage Limit Offered" as "35,000," where it should have read "1,000,000" (i.e., the amount of the bodily injury liability coverage). But, this does not mean that the Underinsured Motorist Coverage Selection Form is the more reliable document regarding the insured's intent. **See** State Farm Mut. Auto. Ins. Co. v. Hughes, 438 F. Supp. 2d 526, 537 (E.D. Pa. 2006). As explained above, the "MVFRL does not require a particular form be completed in order to satisfy Section 1734 regarding the election of lesser [underinsured motorist] coverage; it only requires a request in writing for reduced coverage limits." Id.

Moreover, Clouse's signature on the Important Policy Notice cures any potential ambiguity. A signed Notice that mirrors the notice in 75 Pa. Cons. Stat. § 1791 creates a "conclusive" and irrebuttable presumption that the insured has been advised of the benefits and limits available under the MVFRL. Prudential Prop. & Cas. Ins. Co. v. Pendleton, 858 F.2d 930, 935 (3d Cir. 1988). So, we must presume that Clouse knew he could have bought up to $1,000,000 in underinsured motorist coverage.

11

Because we find that the Farmland Policy Application was a valid election under Section 1734, the fact that Clouse Trucking did not request reduced underinsured motorist coverage on the Underinsured Motorist Coverage Selection Form is not dispositive, as "it did not preclude [the insured] from making such a 'request in writing' in another manner." Hughes, 438 F. Supp. 2d at 537. Accordingly, the District Court properly granted summary judgment to Farmland.

## IV. CONCLUSION

For the foregoing reasons, we will affirm.